339 So.2d 547 (1976)
FEDERAL COMPRESS & WAREHOUSE COMPANY
v.
Joe T. REED et al.
No. 48705.
Supreme Court of Mississippi.
October 19, 1976.
Jacobs, Griffith & Povall, Charles C. Jacobs, Jr., Cleveland, for appellant.
Hatcher & Westerfield, John L. Hatcher, Cleveland, for appellees.
Before GILLESPIE, C.J., and PATTERSON and WALKER, JJ.
GILLESPIE, Chief Justice, for the Court:
Joe T. Reed and Joe W. Reed, doing business as Reed Farms, sued Federal Compress & Warehouse Company (Compress) in the Circuit Court of Bolivar County. Judgment was entered in favor of Reed Farms after a jury trial, and Compress appealed.
Reed Farms stored about 250 bales of cotton in the warehouse operated by Compress. On October 21, 1972, a fire destroyed the cotton in one section of Compress' warehouse, including 88 bales owned by Reed Farms. More than 7,000 bales of cotton were lost in the fire, and Compress was unable to notify all of the owners, including Reed Farms, of the quantity and numbers of their bales of cotton until about November 22, 1972. Compress had the cotton insured for its value as of the date of destruction. The 88 bales belonging to Reed Farms were valued at $10,198.41 as of the date of the fire, and this amount was paid to Reed Farms. Between the date of the fire and November 22, 1972, the date Compress notified Reed Farms of the extent of their loss, the price of cotton increased in value, and the 88 bales were worth on the latter date $2,016.81 more than on the date of the fire. This is the amount involved in the present suit.
The fire started accidentally, but the proof showed, and the jury found, that Compress was negligent in not being able to control the fire because of an improper sprinkler system protection, holes in the hoses attached to water mains, unavailability *548 of appropriate wrenches to turn on the water and in other respects. However, we find that the negligence attributable to Compress were acts of omission and did not constitute gross negligence tantamount to a wilful wrong. We are of the opinion that the facts established simple negligence on the part of Compress so overwhelmingly that a discussion of the evidence is unnecessary.
The question for this Court's decision is as follows: When goods of fluctuating value are stored in a warehouse and are destroyed by reason of the simple negligence of the warehouseman, what is the measure of damages when the market value of the goods increases between the date of destruction and the date the owner learns of the extent of the loss?
We do not have a case of a declining market and this opinion deals only with a situation where the market rises between the date of loss and the date the owner is notified of the quantity and numbers of the bales lost.
This is a new question in the precise form presented by this case. Ordinarily the measure of damages for negligent destruction of property is the value of the property at the time of destruction. 22 Am.Jur.2d, Damages §§ 146 and 147 (1965). For reasons to be stated, this measure does not adequately compensate Reed Farms under the particular facts of this case.
We have carefully studied Hattiesburg Compress Co. v. Johnson, 81 Miss. 731, 33 So. 654 (1902), upon which both parties rely to some extent. In that case the owner recovered the value of his cotton, lost by the Compress Company, as of the time the fact of loss and the quantity of the loss were known to the Compress Company and Johnson, the owner of the cotton. The instant case is different from the Hattiesburg case in that both parties knew of the fact of loss and the extent of the loss in the Hattiesburg case, while in the instant case the fact that a loss had occurred was known to Compress and Reed Farms on October 21, 1972, but Reed Farms was not notified of the extent of the loss until about November 22, 1972. If we now follow what the Court did in the Hattiesburg case, Reed Farms should recover the value of the 88 bales of cotton at the time Compress notified Reed Farms of the extent of the loss.
Reed Farms obviously placed their cotton in the warehouse because they were not ready to sell. In other words, they were holding the cotton for a better market. After it was generally known that a fire had occurred, Reed Farms could not sell their cotton because they did not know how much was destroyed and, therefore, did not know how much they owned. They had a right to follow the market from day to day and sell whenever the condition of the market suited them. They may or may not have exercised this right, but it was a right to which they were entitled. It was the duty of Reed Farms to mitigate damages under the general rule that one whose property has been negligently injured or destroyed must do what is reasonably necessary to mitigate his damages. But Reed Farms could not have gone on the market and bought cotton to replace that lost until they knew the extent of their loss. If Compress had notified Reed Farms on the day of the fire of the extent of their loss, then that date would have been the proper time to value the cotton and thus measure the damages. But this was not done. There is some evidence that if Reed Farms had pressed Compress for the quantity of cotton lost they could have learned the extent of their loss earlier, but we think there was no greater obligation on Reed Farms in this respect than there was on the part of Compress.
After Reed Farms was notified of the extent of their loss, it was up to them to decide whether they would go on the *549 market and buy cotton at that day's price to replace the cotton destroyed. They could not have done so before they knew the extent of their loss. Therefore, we hold that in order to adequately compensate Reed Farms, they should be paid the value of the cotton when both Compress and Reed Farms knew the quantity and numbers of the bales destroyed. And it is immaterial whether Reed Farms intended to replace the cotton. In our opinion, the measure of damages should not be placed on such a subjective basis, for to do so would be to encourage falsehood as to the owners' intention and to put a premium on those who falsified their actual intentions.
Compress argues that Reed Farms are limited as to the amount of damages by the provisions of Mississippi Code Annotated section 75-7-204 (1972), which provides that "Damages may be limited by a term in the warehouse receipt or storage agreement limiting the amount of liability in case of loss or damage," etc. There is no provision in the warehouse receipt with reference to the limitation of damages, but it makes reference to the "tariff of the company." The tariff provides for Compress to carry all risk insurance and in reference to this insurance, the tariff provides:
(a) The actual cash value provided for in this insurance coverage shall be the market value of uncompressed cotton based upon the nearest applicable USDA spot market quotations for the location where the loss occurs at the time and place of loss... .
The first paragraph of Code section 75-7-204 provides as follows:
(1) A warehouseman is liable for damages for loss of or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful man would exercise under like circumstances but unless otherwise agreed he is not liable for damages which could not have been avoided by the exercise of such care.
In interpreting this section of the Uniform Commercial Code, any attempted exemption will be strictly construed against the exemption clause. In 78 Am.Jur.2d, Warehouses section 237 (1975), it is said:
It is widely held that a warehouseman lacks the power to contract against liability for his own negligence, but even assuming that he has such power it is clear that the courts will strictly construe the exemption clause and will not allow the exemption, unless the contract plainly shows that it is the intention of the parties to relieve the warehouseman from responsibility for the results of such conduct. Thus, a clause in a receipt to the effect that the warehouseman shall not be liable for damage to the goods has been interpreted not to relieve him from the obligation of exercising reasonable care.
It could not be argued with reason that the parties could have contemplated (1) that Compress would fail to exercise reasonable care and (2) as a result a delay would ensue between the date of loss and the date Reed Farms would learn of the extent of their loss. Of course, but for the delay, the valuation at the time of loss would be the measure of damages. The claimed limitation on liability does not apply to the facts of this case.
For the reasons stated, we are of the opinion that the judgment of the court below should be and is affirmed.
AFFIRMED.
PATTERSON and INZER, P. JJ., and SMITH, ROBERTSON, SUGG, WALKER, BROOM and LEE, JJ., concur.