418 So.2d 54 (1982)
R.B. HARPER, d/b/a Harper House Movers
v.
Howard HUDSON.
No. 53283.
Supreme Court of Mississippi.
July 21, 1982.
*55 Rex Gordon, Sr., Gordon, Myers & Gordon, Pascagoula, for appellant.
A. Vincent Blackwell, Pascagoula, for appellee.
Before WALKER, BROOM and ROY NOBLE LEE, JJ.
BROOM, Justice, for the Court:
Storm damage (Hurricane Fredric) to the house of plaintiff Howard Hudson (appellee) occurring during the time contractor R.B. Harper, d/b/a Harper House Movers (appellant) was attempting to move it for Hudson, forms background to this case appealed from the Circuit Court of Jackson County, the Honorable Clinton E. Lockard, Circuit Judge, presiding. Hudson, the owner, sued contractor Harper for damages to the house admittedly resulting from the storm. The jury found "for the Plaintiff, Howard Hudson in the amount of $10,500.00 and for the Defendant R.B. Harper in the amount of $1,500.00 for labor and materials." We reverse.
Harper appeals, contending that (1) the damages complained of were due to an act of God for which Harper cannot be legally liable, (2) erroneous jury instructions were given, and (3) the lower court erred in allowing into evidence an advertisement which Harper had bought in the local telephone directory.
Hudson's declaration alleged that the parties had orally contracted to the effect that Harper would move a house which Hudson had purchased. Moving operations began on August 9, but he charged that Harper
[W]as negligent in not completing such moving operation prior to September 12, 1979. That the Defendant failed, refused and negligently did not secure such home as it was located on the trailer aforesaid, and that on or about September 12, 1979, such home was destroyed, and that as a direct and proximate result of the failure to move such home and the negligence on the part of the Defendant as aforesaid, the Plaintiff suffered loss in the amount of Forty-five Thousand and 00/100 Dollars ($45,000.00).
Movement of the house was to be a distance of about a mile and a concrete slab was poured for the new location on August 17, 1979. Contractor Harper, the defendant, moved the den on September 11, but then bogged down when moving the garage and had to use a winch to get to the site. The two-story section of the house was loaded upon the trailer and fastened to steel beams. At that stage, Hurricane Fredric was posing a threat and, in order to protect the house situated on the trailer, the trailer was lowered and, according to Harper, he took every precaution and did everything reasonable to protect the house. Hudson takes the position that Harper did not properly brace the house so as to be prepared for the storm, which caused great damage to the upper two-story section of the house. Hudson offered testimony that the contract price for the house was $10,500.00.
SHOULD CONTRACTOR HARPER BE EXONERATED ON THE BASIS THAT THE DAMAGES WERE AN ACT OF GOD FOR WHICH HE CANNOT BE LEGALLY LIABLE? Harper contends that he "cannot be held to the degree of foreseeability as to reasonably know a hurricane of tornadic winds would strike the Mississippi Gulf Coast. To hold otherwise is to make the Appellant responsible for a mere possibility for the occurrence of an event that is not foreseeable."
We think a jury issue was made as to whether Harper took the proper measures to protect the house from damage from the impending storm. There was at least some substantial testimony which would support the theory of Hudson's case that Harper was negligent in taking inadequate *56 means to secure the house after placing it on the trailer, which, if believed, could be a proper basis of liability.
Plaintiff Hudson testified, as follows, about his conversation with Harper:
And Mr. Spooner pulled up and we both got into a conversation with Mr. Harper and got to talking about that hurricane. It was coming in here the next day. We was pretty well sure that it was coming by then  that was the day before. And we asked him what we was going to do about it. He said, "Well," he said, "we going to come in here. We're fixing to move these two wings today." He said, "We're going to get them up there." He said, "The first thing Thursday morning .. ."  that was on a Tuesday he told us this  he said, "First thing Thursday morning, I'm going to come back in here and we're going to hook onto this part here and take it right on up yonder and set that thing up, you know, and get all that thing done where you can get your money, Mr. Spooner." And he said, "Everything will be fine." Said, "We don't have to worry about a thing. We'll all be through with it and everybody will be happy." Well, that sounded good to me, but I knew as well as anybody there was a hurricane coming here that next day, and that thing was pretty vulnerable sitting up on that trailer. So, we went and talked to him about how we would secure it if that hurricane come in here, and he told us if that hurricane come in here, he would come up here and bind it down and auger it down and just, you know, told us how he would get it secured where there was no way it would blow down... . And I figured he would be coming any moment, you know, come up there and secure the house. He had it sitting up there on a trailer about two foot off the ground where, you know, you could just about grab it and rock it if, you know, you were strong enough. It wasn't stable at all.
Dennis Clark testified that the house was jacked up about three weeks "on the trailer" and that he observed the house just prior to the hurricane and went to it with others to see if it was tied down. The following is excerpted from his testimony:
Q Was the house tied down?
A No, sir. It had some boards around it, kind of braced off, but there weren't very many of them. They was small boards.
Q Alright. Where were these boards located?
A In the corners.
Q Alright. How many boards on each corner?
A Just one, I think.
Q And was there any other means of holding that house down to the trailer?
A No, sir. The trailer ... the tongue of the trailer was on blocks ... just had it level, but that's all.
Q And the only thing that you observed to steady that was one board on each of the four corners of that house?
A Yes, sir, just to keep it steady on the trailer.
We think this testimony and the other testimony was sufficient to raise a jury issue on liability based on negligence. This case is distinguishable from Harry Dole Dodge of Pascagoula, Inc. v. Cox, 246 So.2d 918 (Miss. 1971) and other cases cited, in that here there is substantial evidence showing that after Harper removed the house from its moorings and onto a trailer, he failed to use proper means to tie it down or protect it from the hurricane.
The next argument is that the lower court erred in granting instructions P-6a, P-7, and P-8. The argument is that the instructions do not set forth specific facts of negligence and are without sufficient evidentiary support in the evidence to make them appropriate upon the facts. He says further that the instructions are "vague and general instructions on negligence that do not furnish any guide whatever to the jury and they are at most abstract statements of the law."
We do not view the language of the instructions as so faulty to warrant reversal, but P-8 on the measure of damages is not *57 supported by proper proof of the before and after value, as pointed out later in this opinion.
We think the evidence was insufficient on the element of damages and for that reason, if no other, reversal would be required. As argued by Harper, Hudson did not introduce any knowledgeable or qualified person to testify as to the before and after value of the house. Of course, it is the burden of the plaintiff in a case of this sort to prove his damages by a preponderance of the evidence. The general rule is that if there is any remaining value to the damaged property (and there is no evidence to the contrary here), then the measure of damages is the difference in the value immediately before the casualty or loss and the value immediately after the damage or injury to the property. Stigall v. Sharkey County, 213 Miss. 798, 58 So.2d 5 (1952). Of course, if the property is totally destroyed and rendered absolutely valueless in the accident or casualty, the damages would be the value of the property at the time of such destruction. Federal Compress & Warehouse Co. v. Reed, 339 So.2d 547 (Miss. 1976).
The only testimony about the measure of damages of the value of the property in question was given during the testimony of Theron E. Spooner, who testified that he sold the house in question to the plaintiff Hudson. After preliminary questions to witness Spooner about how his sale came about, he gave further testimony as follows:
Q And did you and Mr. Hudson enter into a contract for the purchase and sale of that home?
A Yes, sir, we did.
Q And what was the purchase price?
A $10,500.00.
Q Now, Mr. Spooner, I would hand you Plaintiff's Exhibit 2 and ask you if you can identify that document?
A Yes, sir, I do.
Q What is that?
A Well, this is the document or agreement, contract between Mr. Hudson, myself and my wife as to his responsibility for the home. And ... I didn't read it in its entirety here, but I think he took responsibility, and I believe it says so in here, on the day that I moved from the house. I had it agreed that he would accept responsibility of the house the day I moved out.
... .
Q How much did he pay you?
A Well, he paid me $10,500.00, the purchase price of the home.
Although we think the purchase price might have some relevancy, it was incumbent upon plaintiff Hudson to give more enlightening testimony about the measure of his damages, since no other testimony was offered on the issue of damages.
DID THE LOWER COURT ERR IN ADMITTING THE TELEPHONE DIRECTORY ADVERTISEMENT OF HARPER INTO EVIDENCE OVER OBJECTION? The advertising consisted of a written ad which is common to telephone directories:

 HARPER HOUSE MOVERS
 SERVING JACKSON COUNTY SINCE 1953
There is no substitute BUY-SELL-MOVE
for experience "We have LAUNCH
the tools, modern equipment
& the know-how to do the job
right"
LICENSED - __________ ALL TYPES FOUNDATION
& CONDITIONAL GUARANTEE WORK
 FREE ESTIMATES
 762 - 1121 ° LEVELING BOAT MOVING & LAUNCHING
3217 INGALLS AV PASCAGOULA MS ° RAISING 30' to 70' LONG

Contained in the ad are the words "Licensed & Conditional Guarantee", and the appellant argues that such language in the ad could have no probative value and could not help but "inflame the jury against" contractor Harper. We agree that the language *58 "Conditional Guarantee" may be construed as suggestive of insurance, and very likely would convey to the jurors the impression that Harper was an insuror of any damages that might occur during the process of moving the property, regardless of negligence on his part.
Appellee Hudson contends that "the advertisement was placed into evidence without objection and Appellant waived any such objection if in fact he had one." As noted in the reply brief of contractor Harper, his counsel made objections which the court overruled but made slight modification in the advertisement before allowing its introduction into evidence. Error in placing the ad into evidence is heightened and aggravated here because the evidence of liability is close.
Careful study of the record indicates that owner Hudson failed to introduce proper testimony as to the measure of his damages. Furthermore, introduction of the telephone directory ad was clearly erroneous. These two errors together with the closeness of the liability issue are sufficient to warrant reversal.
REVERSED AND REMANDED FOR RETRIAL OF ALL ISSUES.
PATTERSON, C.J., SUGG and WALKER, P. JJ., and ROY NOBLE LEE, BOWLING and HAWKINS, JJ., concur.
DAN M. LEE, J., dissents.
PRATHER, J., takes no part.