493 So.2d 964 (1986)
John H. BELL, Sr. & Sharon B. Bell
v.
FIRST COLUMBUS NATIONAL BANK.
No. 56750.
Supreme Court of Mississippi.
August 27, 1986.
*965 Charles D. Easley, Jr., Columbus, for appellants.
W.H. Jolly, Jr., Threadgill, Smith, Sanders & Jolly, Columbus, for appellee.
*966 Before WALKER, C.J., and ROBERTSON and ANDERSON, JJ.
ROBERTSON, Justice, for the Court:

I.
This action arises upon two homeowners' covenant to their mortgagee that they would keep their mortgaged home in reasonable repair and commit no waste thereon. No doubt because of evidence that five days pre-foreclosure, homeowners stripped the home, a jury found for the mortgagee and assessed modest punitive damages as well.
On appeal, homeowners suggest various errors in the proceedings below but none we find persuasive. For the reasons presently to be articulated, we affirm.

II.

A.
In the year 1973 John H. Bell, Sr. and Sharon B. Bell, husband and wife, owned a residence in Columbus, Mississippi, known as Lot No. 54, Pleasant Ridge Estate, Third Extension, Lowndes County, Mississippi. The Bells were the Defendants below and are the Appellants here. On May 11, 1973, the Bells executed a deed of trust conveying the above described lot and all improvements thereon to W.H. Jolly, Jr., Trustee, for the use and benefit of First Federal Savings & Loan Association of Columbus. This deed of trust was properly lodged of record in the office of the Chancery Clerk of Lowndes County.
Thereafter, the Bells engaged in several business ventures and maintained a banking relationship with the First Columbus National Bank, Plaintiff below and Appellee here. As security for various loans made by the bank, the Bells, on May 24, 1974, July 1, 1980, and June 7, 1981, executed and delivered to the bank second deeds of trust covering their residence. As a result of business failures, the indebtednesses owing both to First Federal and the bank fell into arrears.
On July 7, 1983, the Bells filed their voluntary petition in bankruptcy in the United States Bankruptcy Court for the Northern District of Mississippi, No. 83-10270. On November 3, 1983, the Bankruptcy Court entered its order granting the Bells their discharge in bankruptcy. During the course of the bankruptcy proceedings, of course, no effort was made by the bankruptcy trustee to take possession of the Bells' residence. As property subject to a perfected security interest held both by First Federal and the bank, the residence never became a part of the bankruptcy estate.
In due course thereafter, First Federal Savings & Loan commenced foreclosure proceedings with respect to its 1973 deed of trust. On February 12, 1984, five days before the scheduled foreclosure sale, the Bells held a garage sale. An advertisement published in the want ad columns of the Columbus newspaper read as follows:
Sunday, Feb. 12  12:00 Noon to 6:00 p.m. Indoors. Custom Drapes, linens, housewares, adult and children's clothes and shoes, carpet scrapes, light fixture & much, much more. 703 19th Avenue North.
A neighbor, Ann Fussell, attended the sale with her daughter and observed carpet rolled up in one room and the padding. Sharon Bell told Fussell that the carpet was for sale and made the statement, "We're selling just about everything  anything you want to buy." Fussell took some shutter doors for the kitchen or bath down to her house, but when she determined they would not fit, she brought them back. She observed one light fixture being taken down and sold in the dining area; she also observed someone purchase a roll of carpet.
The foreclosure sale occurred on February 17, 1984, at which time the bank purchased the property which, of course, necessitated the bank paying off the indebtedness owed to First Federal. Several days later Robert E. Lamar, a vice president at the bank, inspected the premises and found that the carpet, electrical fixtures, *967 and ceiling fans had been removed, wall covering in every room, with the exception of two bathrooms, had been torn and damaged, and in two bedrooms, the closet doors and jams had been removed. In the kitchen, built in appliances and several cabinet units had been removed, base and wall cabinets had been removed which housed an oven, cook top and vent-a-hood, and a dishwasher had been removed from a cabinet next to the sink. Also the intercom system and speakers had been removed from the wall. The removal of these fixtures as well as other damage to the house reduced its fair market value, necessitated repairs and replacements, and has led to this lawsuit.

B.
On April 17, 1984, First Columbus National Bank filed its complaint in the Circuit Court of Lowndes County, Mississippi, naming John H. Bell, Sr. and Sharon B. Bell as defendants. The bank asserted their deeds of trust and specifically claimed reliance upon a covenant in each such deed of trust to the effect that the Bells bound themselves
to keep the improvements thereon [upon the property conveyed in trust] in reasonable repair and not permit waste of said property; ... .
The bank alleged that it was forced to repair the house and replace the missing fixtures before it could be sold and that it incurred repair and replacement expenses in the amount of $5,350.00 for which amount it sought recovery from the Bells. The bank further alleged that the Bells had damaged the property wilfully and wantonly and demanded $5,000.00 in punitive damages.
On May 14, 1985, this matter came on for trial before the Circuit Court of Lowndes County sitting with a jury, and on that same day the jury returned a verdict in favor of the bank and against the Bells in the amount of $5,350.00 in actual damages and $1,500.00 in punitive damages. Based upon the jury's verdict, the Circuit Court entered judgment on May 20, 1985, in favor of the bank and against the Bells in the total amount of $6,850.00. Following denial of their post-trial motions for judgment notwithstanding the verdict or, in the alternative, for a new trial, the Bells perfected their appeal to this Court where the matter is now ripe for review.

III.

A.
The Bells' initial assignment of error is that, as a matter of law, the bank in its complaint failed to state a claim upon which relief could be given. The contours for consideration of such a point normally emanate from Rule 8(a) and (e) and 12(b)(6), Miss.R.Civ.P. See Luckett v. Mississippi Wood, Inc., 481 So.2d 288, 290 (Miss. 1985); Stanton & Associates, Inc. v. Bryant Construction Company, Inc., 464 So.2d 499, 504-06 (Miss. 1985). Because this case has been fully tried, a final judgment entered and motion for judgment notwithstanding the verdict denied, we view the question whether the bank may recover from the vantage point of the last procedural effort of the Bells to test the legal sufficiency of the bank's case, to-wit: the motion for judgment notwithstanding the verdict. See Clements v. Young, 481 So.2d 263, 268-69 (Miss. 1985).
The Bells make two points here. First, they argue that the bank's claim has been discharged in bankruptcy. Second, they argue that, because the bank bought the property upon foreclosure of the first deed of trust, any rights the bank may have had under their second mortgages (such as the covenant for repair and not to commit waste) were extinguished. Neither point may afford them appellate relief.

B.
To be sure, a bankruptcy adjudication bars a secured creditor's suit on the underlying debt. The right of the secured creditor to foreclosure upon its collateral, however, remains unimpaired. See e.g., Federal Deposit Insurance Corp. v. Davis, 733 F.2d 1083, 1085 (4th Cir.1984); First *968 State Bank v. Zoss, 312 N.W.2d 127 (S.D. 1981); Lincoln Savings & Loan Association v. Anderson, 115 Neb. 199, 212 N.W. 210, 212 (1927); Roach v. Bennett, 24 Miss. 98, 103 (1852). These general statements do not carry us far, because here we confront a claim of post-bankruptcy violation of a pre-bankruptcy contractual obligation. That is, on May 24, 1974, July 1, 1980, and June 7, 1981, the Bells obligated themselves to keep the property in reasonable repair and not permit waste. As indicated above, the discharge in bankruptcy was granted on November 3, 1983. The Bells are said to have violated the covenant just over three months later  on February 12, 1984.
The point must be disposed of on procedural grounds. Before a party defendant to a civil action may avail himself of the benefits of a bankruptcy discharge, he must speak up. Rule 8(c), Miss.R.Civ.P., designates discharge in bankruptcy an affirmative defense and directs that a party defendant "shall set [it] forth affirmatively". Failure to assert the defense may constitute a waiver. See Personal Industrial Loan Corp. v. Forgay, 240 F.2d 18, 19 (10th Cir.1956); In Re Carwell, 323 F. Supp. 590, 593 (E.D.La. 1971). Cf. Allied Chemical Corporation v. Mackay, 695 F.2d 854, 855-56 (5th Cir.1983) (construing similarly worded Rule 8(c), F.R.Civ.P. in context of another affirmative defense).
We have examined the answer the Bells filed May 7, 1984, and find it silent on the bankruptcy matter. The Bells made no effort to assert the defense prior to the May 14, 1985 trial and in fact the bankruptcy discharge is first mentioned in the record when Sharon Bell attempts to interject the subject at trial, at which point the bank's objection was sustained by the Circuit Court. The bank has in no way acquiesced in the point being considered at trial, see Johnson v. Franklin, 481 So.2d 812, 815 (Miss. 1985); and appears to have made timely objection (although Sharon Bell's would be testimony was hardly a formal assertion of the affirmative defense of discharge in bankruptcy).
The record reflects that on May 20, 1985, following the jury's verdict final judgment was entered in favor of the bank and against the Bells. Three days later the Bells filed their motion for judgment notwithstanding the verdict and, for the first time, formally asserted the bankruptcy discharge as a defense to the bank's action. This plea came too late. Assuming arguendo that the bank's claim on the covenant was one dischargeable in bankruptcy, see 11 U.S.C. § 365, the Bells lost their right, if any, to invoke the shield of their discharge by failure timely to assert it affirmatively.

C.
Second, we find unpersuasive the argument that the bank lost the benefit of the reasonable repair and no waste covenants by purchasing the property at foreclosure. No doubt the title acquired by the bank on February 17, 1984, emanated from the foreclosure of the first deed of trust. The bank held title as a purchaser at a foreclosure sale and not as a second mortgagee. Snead v. Dooley, 221 Ala. 598, 130 So. 222, 223 (1930). There is no reason why this premise should operate to discharge the Bells from personal obligations assumed in the deeds of trust they executed in favor of and delivered to the bank. Where, as here, the bank has been required to make substantial repairs in order to place the property in a marketable condition, it may recover those costs where it is established that the losses were the result of the Bell's breach of their covenant obligations. That the bank may have acquired title via an alternate route is beside the point.
Here the bank was within its every right to proceed against the Bells for recovery of losses the bank had sustained as a proximate result of the Bells' breach of their covenants of reasonable repair and no waste. Those obligations were not extinguished in the foreclosure sale nor was the bank's right to enforce them waived or in other ways lost. There was substantial credible evidence adduced at trial to the effect that the Bells did in fact commit *969 waste upon the property and failed to have it in reasonable repair.[1] The Circuit Court correctly overruled the Bells' motion for judgment notwithstanding the verdict. See Mattina v. Rodolfich, 461 So.2d 751, 753 (Miss. 1984); First Mississippi Bank of Commerce v. Latch, 433 So.2d 946, 950 (Miss. 1983); O.J. Stanton & Co. v. Mississippi State Highway Commission, 370 So.2d 909, 911 (Miss. 1979); Paymaster Oil Mill Company v. Mitchell, 319 So.2d 652, 657 (Miss. 1975); Dickey v. Carothers & Carothers Construction Co., 230 So.2d 813, 816 (Miss. 1970).

IV.
The Bells next argue that the Circuit Court erroneously allowed the bank's witness to use replacement cost as a measure of the bank's damages. Such an approach, we are told, put the bank in a better position than it would have occupied had the breach of covenant not occurred. The bank's damages witness gave an estimate of what it would cost to repair damage to the house and replace the items removed, while the Bells offered testimony to the effect that the items removed were a number of years old and that their usable life expectancy was near an end. The Bells argue that the bank's damages, if any, should be determined by reference to the value of what was taken  used-depreciated items  rather than reasonable replacement cost for new materials. As the Bells put it, is the bank "entitled to the value of new fixtures, when most of the old ones were in excess of eleven years old"?
This Court has held that "the liability of a mortgagor for acts impairing the value of the mortgaged property is determined by the law of waste". Planters Mfg. Co. v. Greenwood Agency Co., 168 Miss. 892, 899, 152 So. 476, 477 (1934). Here, the Bells as mortgagors impaired the value of the mortgaged property by selling items in the home before foreclosure and thereby breached their obligation not to commit waste. When we look to the law of waste, however, we find in this state no case in point.
Generally, the measure of damages for waste is the difference between the fair market value of the property before and after the waste. Meyer v. Hansen, 373 N.W.2d 392, 396 (N.D. 1985); Lipton Realty v. St. Louis Housing Authority, 705 S.W.2d 565, 569 (Mo. App. 1986); 78 Am.Jur.2d, Waste, § 35. Several states, however, allow an injured party to establish damages for waste by showing either the before-and-after difference in fair market value or by the reasonable cost of repair. Meyer, 373 N.W.2d at 396.
This Court has never attempted to formulate a standard for measuring damages due to waste. Several cases determining damages for injury to property do in other contexts provide some guidance.
In Teledyne Exploration Co. v. Dickerson, 253 So.2d 817 (Miss. 1971) property owners brought an action against a seismic exploration company to recover for damages to their home allegedly resulting from seismographic operations conducted on adjoining property. The only recovery sought by the property owners was the cost of repairing their home to its original condition. This Court held:
Where the injury to property is repairable, the cost of repairs is a proper measure of damages.
253 So.2d at 819.
Subsequently, we employed the before-and-after rule. In Harper v. Hudson, 418 So.2d 54 (Miss. 1982), a property owner brought an action against a contractor seeking to recover for storm damage to his home occurring during the time the contractor was moving the home. Without referring to Teledyne, this Court held:
The general rule is that if there is any remaining value to the damaged property ... then the measure of damages is the *970 difference in the value immediately before the casualty or loss and the value immediately after the damage or injury to the property.
418 So.2d at 57.
These conflicting standards were addressed in Thomas v. Global Boat Builders and Repairmen, Inc., 482 So.2d 1112 (Miss. 1986). The Court there noted two elements to be considered when personal property was damaged but repairable: (1) the cost of repairs and (2) depreciation, if any, following repairs. 482 So.2d at 1115. If personal property is repairable, the same result should be reached regardless of whether the before and after standard is applied or the cost of repairs plus depreciation standard is applied. 482 So.2d at 1115. In addition, if repairs to damaged personal property will make it worth the same as it was before the damage, the calculation of the cost of repairs is all that is necessary. 482 So.2d at 1115. Thus, where personal property has been damaged, but is repairable to its functional use, the appropriate measure of damages may either be the difference in value before and after the damages or the cost of repair plus depreciation, if any. In this context, we find merit in the approach taken by the North Dakota Supreme Court in Meyer v. Hansen, 373 N.W.2d 392 (N.D. 1985), in fashioning a measure of damages for waste:
Given the absence of an express legislative pronouncement, and given that the object of an award of damages is to compensate without unjust enrichment, we believe there should be no exclusive test for measuring property damage for waste. Rather, it is best to adopt the more flexible approach in which the mode and amount of proof must be adapted to the facts of each case. [citations omitted] We hold that, depending on the facts of each case, either diminution in value or cost of repair is the appropriate measure of damages for waste. Plaintiff has the right to elect the measure deemed more accurate and if the defendant disagrees, he has the burden to prove the alternative measure is more appropriate.
373 N.W.2d at 396-97.
Adoption of this approach would be consistent with our existing rules regarding the measure of damages for injury to property and breach of contract. Plaintiff can choose to prove either reasonable cost of replacement or repairs or diminution in value, and if he proves either of these measures with reasonable certainty, damages are allowable, so long as the plaintiff will not be unjustly enriched and the defendant does not demonstrate that there is a more appropriate measure of damages. In a setting where replacement of damaged or missing fixtures with new items is the only practicable means of restoring the facility to a valuable, marketable condition such reasonable replacement costs may be allowable as damages, even though the items replaced were other than brand new. See Koyen v. Citizens National Bank, 107 Neb. 274, 185 N.W. 413, 414 (1921).
In the case at bar, the diminution in value before and after the damage to the property may have been greater than the cost of repair. At least one bank witness testified to an adjusted damages figure of $7,000.00. Notwithstanding, we find that the bank has elected to proceed upon a reasonable cost of replacement and repair theory. It being as a practical matter impossible to obtain depreciated fixtures, the bank reasonably had no choice to purchase and install new items, the reasonable aggregate cost of which was $5,350.00. The bank chose its remedy; there is no unjust enrichment to it under these circumstances. The Bells have not demonstrated that there is a more appropriate measure for making the bank whole. As the bank proceeded upon a theory we regard as authorized in our law, we find the assignment of error without merit.

V.
Finally, the Bells mount a challenge to the jury's assessment of $1,500.00 in punitive damages against them. Before *971 punitive damages may be assessed against a party, there must be substantial evidence either (1) that that he acted with malice or (2) that he acted with gross negligence or reckless disregard for the rights of others. Aetna Casualty & Surety Company v. Day, 487 So.2d 830, 832 (Miss. 1986); Weems v. American Security Insurance Company, 486 So.2d 1222, 1226 (Miss. 1986). The evidence regarding the Bells' deliberate stripping of the house five days before foreclosure is more than sufficient to present a jury issue and render the verdict beyond our authority to disturb. Bankers Life and Casualty Company v. Crenshaw, 483 So.2d 254 (Miss. 1985).
AFFIRMED
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ. and DAN M. LEE, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.
PRATHER, J., not participating.
NOTES
[1] We do not understand the Bells here to question that the items removed were fixtures subject to the First Federal deed of trust through foreclosure of which the bank acquired title nor do we understand the Bells to deny that the damage otherwise done to the house constitute waste.