**Anton VOGEL and Ruth Vogel, husband and wife, Plaintiffs and Appellants,**

v.

**Richard G. PARDON, Paul Rasmussen, Ronald Klein, and A. Gaylord Folden, jointly and severally, Defendants and Appellees.**

**Civ. No. 880231.**

Supreme Court of North Dakota.

July 17, 1989.

Dietz & Little, Bismarck, for plaintiffs and appellants; argued by Janell M. Knutson, Bismarck. Appearance by Stephen D. Little.

Zuger, Kirmis, Bolinske & Smith, Bismarck, for defendants and appellees; argued by Charles T. Edin, Bismarck.

LEVINE, Justice.

Anton and Ruth Vogel appeal from a district court judgment awarding them damages for waste arising out of the sale of an apartment building. We affirm.

In 1981 the Vogels sold an apartment building in Bismarck to Richard Pardon, Paul Rasmussen, Ronald Klein and A. Gaylord Folden [hereinafter "the Partners"] on a contract for deed. The Partners quit making payments in September 1985, and the Vogels subsequently canceled the contract for deed by notice, pursuant to Chapter 32–18, N.D.C.C. The cancellation was effective March 31, 1986. The Partners quit-claimed the property back to the Vogels in May 1986.

The Vogels then commenced this action seeking damages for waste.[1] The Vogels asserted that the property had been in good repair when the Partners took possession in 1981, and that the property was in an unrentable condition when returned in 1986, due to the Partners' failure to make necessary repairs. The Partners asserted that the building, which had been constructed in 1963, was in an advanced state of disrepair when they purchased it from the Vogels in 1981, and that any damage was caused by ordinary wear and depreciation of the property, not by any waste on their part.

The case was tried to the court. The court found that the Partners had failed to properly repair the roof of the building, resulting in water damage to the building and contents, for which it awarded the Vogels $4,000 in damages. The court also awarded damages of $500 for furniture which was discarded, sold, or converted by the Partners. Judgment was entered accordingly and the Vogels appealed.

1. The Vogels also sought other relief unrelated

## I. WASTE

The Vogels assert that the trial court erred in not allowing damages for waste for numerous items, particularly the cost of replacing the roof, and that the trial court employed an incorrect measure of damages.

The Vogels argue that the court erred in failing to award damages for waste to various items, including appliances, carpeting and linoleum. We delineated the applicable standards for determining what conduct constitutes waste in *Meyer v. Hansen*, 373 N.W.2d 392, 395 (N.D.1985):

> "Waste may be defined as an unreasonable or improper use, abuse, mismanagement, or omission of duty touching real estate by one rightfully in possession, which results in a substantial injury. 4 Thompson, Real Property, § 1853. Waste implies neglect or misconduct resulting in material damage to property, but does not include ordinary depreciation of property due to age and normal use."

*See also* Section 32–17–02, N.D.C.C.

Whether waste has occurred is a question of fact. *Pleasure Time, Inc. v. Kuss*, 78 Wis.2d 373, 254 N.W.2d 463, 468 (1977). The trial court's findings of fact will not be set aside on appeal unless clearly erroneous, with due regard given to the trial court's opportunity to judge the credibility of witnesses. Rule 52(a), N.D.R.Civ.P. A finding of fact is clearly erroneous when, although there is some evidence to support it, the reviewing court on the entire record is left with a definite and firm conviction that a mistake has been made. *KBM, Inc. v. MacKichan*, 438 N.W.2d 181, 183 (N.D. 1989). A finding of fact that comports with one of two permissible views of the evidence is not clearly erroneous. *KBM, Inc. v. MacKichan, supra*, 438 N.W.2d at 184; *Butler v. Roberts*, 437 N.W.2d 839, 841 (N.D.1989).

 The evidence on whether there was waste to appliances, carpeting and linoleum

to the issues on this appeal.

was conflicting and the trial court found that these items were nearing the end of their useful lives when the building was sold and had simply worn out due to ordinary wear and age, rather than from any wrongful conduct of the Partners. We conclude that the trial court's findings in this regard are not clearly erroneous. Pursuant to our holding in *Meyer v. Hansen*, *supra*, the Vogels were not entitled to recover damages for items which had reached the end of their useful lives through ordinary wear.

Much the same reasoning supports the trial court's determination that the Partners were not responsible for the cost of replacing the roof. At some point, the Partners discontinued making repairs to the roof. Consequently, leaks developed which caused water damage to some of the apartments. The court found the Partners liable for the water damage to the interior of the building but found that the roof had simply reached the end of its useful life through ordinary wear and age, and thus, did not allow damages for the replacement of the roof itself.

There is evidence to support the trial court's finding that the roof had reached the end of its useful life through ordinary wear and age, not through any act or omission of the Partners, and the court's finding is not clearly erroneous. Under these circumstances, the court correctly held that the Partners were liable for water damage to the interior, caused by their failure to repair the roof, but not for the cost of replacing the roof itself. 2 Tiffany, Real Property §§ 641, 642 (3d ed. 1939); 5 Powell, Real Property ¶ 640[3], at 56–20 (1989).

■ We stated in *Meyer v. Hansen*, *supra*, 373 N.W.2d at 396, that the object of an award of damages in an action for waste is to compensate without unjust enrichment. If recovery of the replacement cost of the roof were allowed in this case, the Vogels would be unjustly enriched. The Vogels sold the Partners an eighteen-year-old building with an eighteen-year-old roof. There was testimony that the normal useful life of a roof of this type was approximately twenty years. During the period that the Partners were in possession, the roof reached the end of its useful life through ordinary depreciation, wear, and age. If the Vogels were allowed to now recover the replacement cost, they would enjoy the benefit of a brand new roof with another twenty year life expectancy. Conversely, the Partners, through the happenstance of possessing a building with a roof nearing the end of its useful life, would be forced to bear the cost of its replacement, even though the roof required replacement through no fault of their own. Clearly, such a result would unjustly benefit the Vogels. We conclude that the trial court did not err in refusing to award damages for the replacement of the roof.

The Vogels assert that the trial court used an incorrect measure of damages. Their argument on this issue is intertwined with their assertion that the court should have awarded damages for the cost of replacing appliances, flooring, and other items of personal property in the building. As previously discussed, however, the trial court found, with sufficient evidentiary support, that replacement of those items was necessitated by ordinary wear and age, not by any act constituting waste by the Partners.

■ The Vogels' argument is, however, relevant to the award of damages for furnishings which were discarded, sold or converted. The trial court found, in accordance with *Meyer v. Hansen*, *supra*, that the parties intended that the furnishings be included in the sale and that the Partners were therefore liable for the value of any furniture lost or damaged. *See Meyer v. Hansen*, *supra*, 373 N.W.2d at 395. The trial court awarded $500 for the value of the furniture which was discarded or sold. The Vogels assert that the court should have assessed damages based upon replacement cost of the furniture, rather than its actual value.

The trial court, in its memorandum opinion, reasoned:

"The problem is further complicated because it is clear that the appliances, furniture, and roof of this building were nearing the end of their useful lives,

even at the time the building was sold. Some tenants wouldn't use the furniture at all. Some of this furniture was disposed of at an auction sale and brought only $50.... In addition, even when waste does occur to an item which necessitates its replacement, the defendants are not responsible for a new, modern appliance but for the value of the appliance that was lost, keeping in mind that it was at the end of its useful life."

The trial court's resolution of this issue is in accordance with the general rule, as stated in Annot., 82 A.L.R.2d 1106, 1114 (1962):

> "Where the waste alleged to have been committed on the leased premises resulted from the destruction or removal of something from the premises, and the thing thus destroyed or removed, though a part of the realty, had a value which could be ascertained accurately without reference to the soil on which it was located, the measure of the damages recoverable by the landlord for the waste may be based on the value of the thing destroyed or removed, instead of on the diminished market value of the premises."

*See also Duckett v. Whorton,* 312 N.W.2d 561, 562 (Iowa 1981); *Ault v. Dubois,* 739 P.2d 1117, 1121–1122 and n. 7 (Utah Ct. App.1987).

This measure of damages also comports with the directive of *Meyer v. Hansen, supra,* that the object of an award of damages in a waste case is to compensate without unjust enrichment. If the Vogels were allowed to replace old, well-worn furnishings with new (or, at the least, newer) furnishings, they would be unjustly enriched. By allowing damages based upon the actual value of the items lost, the Vogels receive adequate compensation but not overcompensation.

The case relied upon as support by the Vogels, *Bell v. First Columbus National Bank,* 493 So.2d 964 (Miss.1986), is inapposite. In *Bell,* a mortgagor stripped a home of virtually all fixtures, including light fixtures, electrical fixtures, and closet doors, shortly before a foreclosure sale. The court stated that "where replacement of damaged or missing fixtures with new items is the only practicable means of restoring the facility to a valuable, marketable condition such reasonable replacement costs may be allowable as damages, even though the items replaced were other than brand new." *Bell, supra,* 493 So.2d at 970. Assuming, without deciding, that *Bell* is a correct statement of the law as we would apply it in North Dakota, there has been no finding here that replacement with new furnishings was the only means of restoring the apartment building to a valuable condition.[2] We conclude that the trial court employed an appropriate measure of damages in this case.

The Vogels also appear to argue that the trial court's award of damages is excessively low. The trial court's determination of the amount of damages is a finding of fact which will not be set aside on appeal unless it is clearly erroneous. *Meyer v. Hansen, supra,* 373 N.W.2d at 398. We have reviewed the record and conclude that the trial court's determination of the amount of damages, while conservative, is not clearly erroneous.

## II. COSTS

### A. Rule 68 Offer of Judgment

■ Defendant Folden filed for bankruptcy on February 16, 1988. On March 18, 1988, the Partners served upon the Vogels an offer of judgment in the amount of $15,000 pursuant to Rule 68, N.D.R.Civ.P. The Vogels did not respond to the offer of judgment, apparently taking the position that the bankruptcy automatic stay provi-

---

**2.** The Vogels did not, in all instances, seek replacement with new items. To the extent that they sought a replacement cost based upon a used item, it would appear that replacement cost and market or actual value may in fact be the same thing, inasmuch as market or actual value is determined by reference to what a willing buyer would pay a willing seller for a like item. *See, e.g., Adams v. Canterra Petroleum, Inc.,* 439 N.W.2d 540, 545 n. 11 (N.D.1989); *Amerada Hess Corp. v. Conrad,* 410 N.W.2d 124, 129 (N.D.1987). The key, however, is that to prevent unjust enrichment the items must be of like quality and condition.

sion, 11 U.S.C. § 362(a), precluded any further proceedings in the case. The automatic stay was lifted by the bankruptcy court on April 11, 1988, and trial commenced in this action on April 19, 1988.[3]

Although the Vogels prevailed on their claim and received damages for waste, the amount awarded was less than the $15,000 offer of judgment. The trial court thus concluded, pursuant to Rule 68, that the Vogels could not recover their costs incurred after the date of the offer of judgment and that the Vogels were responsible for the Partners' costs incurred after that date.[4]

The Vogels assert that the application of the bankruptcy stay rendered the offer of judgment ineffectual and that they accordingly should be awarded their post-offer costs and should not be responsible for the Partners' post-offer costs. The Vogels, however, have cited no authority suggesting that the filing of a bankruptcy petition by one of several jointly and severally liable co-defendants relieves the plaintiff of its obligation to respond to a Rule 68 offer of judgment. In fact, it is now well-settled that the automatic stay of 11 U.S.C. § 362(a) does not extend to actions against the debtor's co-defendants in pending litigation. *E.g., A.H. Robins, Inc. v. Piccinin,* 788 F.2d 994, 999 (4th Cir.), *cert. denied,* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986); *Fortier v. Dona Anna Plaza Partners,* 747 F.2d 1324, 1330 (10th Cir.1984); 2 Collier, Bankruptcy ¶ 362.04 (1989). Thus, it has been held, for exam-

ple, that "the filing of a petition in bankruptcy by a co-defendant has no effect on plaintiffs' obligation to respond to defendant's interrogatories." *Almy v. Terrace Land Development, Ltd.,* 32 B.R. 390, 391 (N.D.Cal.1983). Similarly, we are not persuaded that Folden's pending bankruptcy relieved the Vogels of their obligation to respond to the Partners' offer of judgment. The record in this case demonstrates that the case proceeded against the Partners, with various motions, responses, and rulings on other matters, in the interim between the filing of Folden's bankruptcy petition and the lifting of the stay by the bankruptcy court. We conclude that the trial court did not err in holding the offer of judgment effective under Rule 68.

## B. Taxation of Costs

The Vogels assert that the trial court erred in allowing the Partners to tax certain items as costs and in disallowing the Vogels' request for certain costs.[5] In particular, the Vogels challenge the allowance of expert witness fees for the Partners' real estate appraiser, the amount of expert fees allowed for the Partners' architect, and the disallowance of their request to tax the costs of Anton Vogel's deposition.

Taxation of costs is governed by Section 28–26–06, N.D.C.C. The allowance of disbursements under Section 28–26–06 lies within the discretion of the trial court, which is in a better position to determine the reasonableness and necessity of the disbursements sought, and the trial court's

---

**3.** In order to be effective under Rule 68, the offer of judgment must be made more than ten days before trial. Thus, because less than ten days elapsed between the lifting of the bankruptcy stay and the commencement of trial, the parties do not argue that the offer of judgment became effective upon the lifting of the stay.

**4.** The Vogels do not on appeal challenge the court's conclusion that Rule 68 shifts the responsibility for the defendant's post-offer costs to the plaintiff. Courts and commentators discussing the corresponding federal rule have noted the lack of agreement on whether Rule 68 requires a prevailing plaintiff who has refused a more favorable offer of judgment to pay the *defendant's* post-offer costs, or if the rule merely prohibits the plaintiff from recovering his *own* post-offer costs. *See, e.g., Crossman v. Marcoc-*

*cio,* 806 F.2d 329, 331–333 (1st Cir.1986), *cert. denied,* 481 U.S. 1029, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1987); Simon, *The Riddle of Rule 68,* 54 Geo.Wash.L.Rev. 1, 6 n. 8 (1985).

The issue has tangentially appeared in two prior cases in this court. In *Overboe v. Sjolin,* 366 N.W.2d 786, 788 (N.D.1985), the issue was not raised, but we noted that the trial court had allowed the defendant's post-offer costs to be offset against the plaintiff's damages. In *Moser v. Wilhelm,* 300 N.W.2d 840, 847 (N.D.1980), the issue was raised but we specifically found it unnecessary to address it.

**5.** As previously noted, because of the Rule 68 offer of judgment, the Vogels were permitted to tax their pre-offer costs and the Partners were permitted to tax their post-offer costs.

decision will be overturned only if an abuse of discretion is shown. *Richter v. Jones*, 378 N.W.2d 209, 213 (N.D.1985).

The Vogels challenge the court's allowance of expert witness fees for a real estate appraiser called by the Partners, arguing that the appraiser did not give an opinion on the value of the property but merely testified as a fact witness on the condition of the property. The Partners contend that the appraiser testified as an expert and gave his opinion of the condition of the property.

 The determination to allow a party to tax as costs the fees of an expert witness is a matter within the trial court's discretion. Section 28–26–06(5), N.D.C.C. Similarly, it is for the trial court, which has participated in the trial and heard the testimony, to make the initial determination whether a witness's testimony should be characterized as "expert" pursuant to Rule 702, N.D.R.Evid., supporting an award of fees. *See Buzzell v. Libi*, 340 N.W.2d 36, 42–43 (N.D.1983). We will not overturn the trial court's determination of the nature of a witness's testimony absent an abuse of discretion. *See Buzzell v. Libi, supra*, 340 N.W.2d at 42–43. The trial court, in allowing taxation of an expert witness fee, impliedly determined that the appraiser testified as an expert. We find no abuse of discretion by the court in doing so.

The Vogels also argue that the court erred in the amount of expert witness fees allowed for an architect called to testify by the Partners. The amount of fees to be allowed for an expert witness is left to the sound discretion of the trial court, which is in a much better position to determine the reasonableness and necessity of the costs and disbursements sought by the prevailing party. *Keller v. Vermeer Manufacturing Co.*, 360 N.W.2d 502, 508 (N.D. 1984). We find no abuse of discretion by the trial court in the amount of expert witness fees allowed.

The Vogels also argue that the court erred in disallowing their request for taxation of costs incurred in taking Anton Vogel's deposition. The allowance of costs and disbursements, including deposition expenses, under Section 28–26–06 is left to the trial court's discretion. *Keller v. Vermeer Manufacturing Co., supra*, 360 N.W.2d at 507–508. We find no abuse of discretion in the court's refusal to tax these deposition expenses as costs.

## III. RULE 38 SANCTIONS

 The Partners assert that the Vogels' appeal is frivolous and seek their costs and attorneys fees on appeal under Rule 38, N.D.R.App.P. An appeal is frivolous if it is flagrantly groundless, devoid of merit, or demonstrates persistence in the course of litigation which evidences bad faith. *Mitchell v. Preusse*, 358 N.W.2d 511, 514 (N.D.1984). The Vogels' appeal is not substantively frivolous and we find no evidence that it was taken in bad faith. Accordingly, we deny the request for Rule 38 sanctions.

The judgment is affirmed.

ERICKSTAD, C.J., and MESCHKE, GIERKE and VANDE WALLE, JJ., concur.