# IN THE COURT OF APPEALS 04/09/96

# OF THE

# STATE OF MISSISSIPPI

## NO. 94-CA-00019 COA

JULIE HEINRICH-DOWNS

APPELLANT

v.

ALLSTATE INSURANCE COMPANY

APPELLEE

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. EUGENE M. BOGEN

COURT FROM WHICH APPEALED: LEFLORE COUNTY CIRCUIT COURT

ATTORNEY FOR APPELLANT:

LEMAN D. GANDY

ATTORNEYS FOR APPELLEE:

JOSEPH L. MCCOY AND GARY SILBERMAN

NATURE OF THE CASE: INSURANCE CLAIM FOR VANDALISM DENIED BY INSURER

TRIAL COURT DISPOSITION: GRANTED PARTIAL SUMMARY JUDGMENT AS TO PUNITIVE DAMAGES AGAINST

INSURER AND DIRECTED VERDICT FOR INSURER BECAUSE OF LACK OF PROOF OF DAMAGES

BEFORE THOMAS, P.J., COLEMAN, AND McMILLIN, JJ.

COLEMAN, J., FOR THE COURT:

Julie Heinrich-Downs (Heinrich) filed a claim with her insurer, Allstate Insurance Company (Allstate), for an alleged act of vandalism to her swimming pool. Allstate denied coverage because the damage to the swimming pool did not appear to be the result of vandalism. The trial court granted Allstate's motion for summary judgment as to punitive damages because it found that Allstate had an arguable basis for denying the claim. Later the trial court also directed a verdict for Allstate based on Heinrich's failure to prove damages. We quote from Heinrich's brief to state the five issues which she argues require the reversal of the trial court's judgment:

> I. The trial court erred in granting Appellee's pretrial motion for summary judgment as to punitive damages.

> II. The trial court erred in sending the jury out at the close of Appellant's case-in-chief, and granting a directed verdict in favor of Appellee without a motion for directed verdict having been made.

> III. The trial court erred in failing to allow the jury to determine whether Appellant's pool damage was caused by vandalism or natural causes which constituted a question of fact and not a question of law.

> IV. The trial court erred in sustaining Appellee's objections to all of Appellant's testimony by Appellant's lay witnesses and expert witness relative to the cause of the pool damage, the cost to repair the pool at the time of the vandalism and the cost to repair the pool damage at the time of trial.

> V. The trial court erred in denying Appellant's motion for new trial.

We resolve these issues adversely to Heinrich and affirm the trial court's final judgment in favor of Allstate.

## I. FACTS

On December 10, 1990, Julie and John Heinrich filed a claim with their insurance carrier, Allstate Insurance Company, concerning damage to their swimming pool's vinyl liner. The Heinriches contended that the small hole punctured in the liner was the result of vandalism and therefore covered under their homeowners' insurance policy. On December 12, 1990, policeman Stacy Walker investigated a reported attempted burglary at the Heinrich's home; however, the Heinriches made no mention of vandalism to their swimming pool to officer Walker at that time. Afterwards, on December 15, 1990, policeman Mark Miller investigated an alleged attempted burglary at the

Heinriches' residence at which time the Heinriches stated that they suspected that their pool had been vandalized.

An Allstate representative, Bruce Haralson, made an on-site inspection of the Heinriches' swimming pool on December 13, 1990 and found that regarding the hole in the pool's liner "something had pushed it out from the side and had left more like--not a cut but actually something that had been pushed out of it and left a lot of jagged marks around the side of it." Haralson further determined that the pool damage was not the result of vandalism, but rather was long-term damage from the rotting of the pool's wooden walls. Haralson determined that this rotting had been caused by below-surface water damage connected with prior improper emptying, shifting ground, and freeze damage. Allstate therefore denied the Heinrich's claim.

On July 1, 1991, Julie Heinrich filed a Complaint against Allstate Insurance Company and Billy Walker Insurance, Inc., seeking $1,500,000 in actual damages and $3,000,000 in punitive damages. Allstate removed the case to federal court by notice of removal on July 30, 1991; however, on April 12, 1993, the case was remanded to state court by memorandum opinion and order of final judgment remanding action to state court because a lack of diversity arising from the Mississippi Defendant, Billy Walker Insurance, Inc.

## II. TRIAL

Upon remand to state court, the circuit court held a pretrial motion hearing wherein it granted the defense's motion to dismiss Billy Walker Insurance, Inc. as a party defendant. The court then heard the Defendant's motion for partial summary judgment as to punitive damages. A pretrial order entered during this case's removal to federal court contained the following stipulation by Julie Heinrich-Downs and Allstate:

> On the basis of inspections, interviews with the Heinrichs, and police reports, Allstate concluded that the pool damage was unlikely to be the result of the suspected vandalism, but rather was long-term damage from rotting from below-surface water damage connected with prior improper pool emptying, shifting ground and freeze damage, and denied the Heinrich's claim.

Pursuant to this stipulation, the trial court held that Allstate had an arguable basis for denying the claim and, therefore, granted the defendant's motion for partial summary judgment as to punitive damages.

At trial, Leman Gandy represented the Appellant, Julie Heinrich-Downs, and Joseph McCoy represented Allstate. At the close of the Plaintiff's case-in-chief, the trial court instructed the jury to retire to the jury room. After the jury retired, the trial judge and the litigants' attorneys engaged in a conference at the bench. We quote selectively from the record to relate what happened during this bench conference.

> **Judge**: I'm going to let him take up his motion here in the courtroom so we don't have to go back there where we'll be kind of crowded, and we can do

just as easily here.

**Mr. McCoy**: It's going to be very short, Your Honor.

The judge asked Gandy, Ms. Heinrich's counsel, "What evidence is there that there was vandalism here . . . ?" Mr. Gandy replied:

> The hole did not come in by itself. I think Mr. Barrentine [Plaintiff's expert] and everybody else proved that somebody took this object and jabbed it -- moved the cover back and jabbed the sharp object to let the water leak out gradually . . . from under this pool.

The judge then stated, "All right, assuming you're correct about that, what are her damages?"

The judge and Mr. Gandy then discussed further whether any evidence had been presented concerning proof of damages by the Plaintiff. Following their conversation, the trial court stated:

> Well, Counsel, I think what we've got here is a failure of proof. I think -- even assuming that there is sufficient evidence to go forward on the issue of vandalism, and I don't think there is, but we'll assume that for the sake of the motion, there's not proof as to her damages. Mr. Barrentine did not testify that the damage shown in these photographs resulted from any act of vandalism and specifically from this hole that you say was punched into the vinyl liner. . . . He didn't even testify as to how much it would cost to repair that hole.

The record discloses that the judge stated, "I think the law compels that I direct a verdict for the defendant."

After the conclusion of the conference at the bench, the jury returned to the courtroom. The trial judge explained that the Defendant had moved for a directed verdict and that he had granted that motion "as in my judgment the evidence offered on behalf of the plaintiff in the case was legally insufficient to support any judgment or verdict in her favor." Heinrich moved for a new trial, which the trial court denied, and she appealed.

**III. ISSUES AND THE LAW**

> **I. The trial court erred in granting Appellee's pretrial Motion for Summary Judgment as to punitive damages.**

**A. Standard of Review**

The Mississippi Supreme Court provided the following standard by which it reviews the issue of whether a trial court erred when it granted summary judgment in *Seymour v. Brunswick Corp.*, 655 So. 2d 892 (Miss. 1995):

> We employ a ***de novo*** standard of review in reviewing a lower court's grant of summary judgment. Thus, we use the same standard that was used in the trial court. We must review all evidentiary matters before us in the record: affidavits, depositions, admissions, interrogatories, etc. The evidence must be viewed in the light most favorable to the nonmoving party who is to be given the benefit of every reasonable doubt. The burden of demonstrating that no genuine issue of material fact exists is on the moving party. However, this burden on the moving party is one of production and persuasion, not of proof. A motion for summary judgment lies only when there is no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law. This Court does not try issues on a [R]ule 56 motion, it only determines whether there are issues to be tried. In reaching this determination, this Court examines affidavits and other evidence to determine whether a triable issue exists, rather than for the purpose of resolving that issue.

*Id.* at 894-95 (citations omitted).

We begin our consideration of this issue by quoting the following stipulation which Heinrich and Allstate included in the pretrial order entered in this case before the United States District Court remanded it to the Leflore County Circuit Court:

> On the basis of inspections, interviews with the Heinrichs, and police reports, Allstate concluded that the pool damage was unlikely to be the result of the suspected vandalism, but rather was long-term damage from rotting from below-surface water damage connected with prior improper pool emptying, shifting ground and freeze damage, and denied the Heinrich's claim.

*Standard Life Ins. Co. of Indiana v. Veal*, 354 So. 2d 239, 248 (Miss. 1977), a "seminal" case on the award of punitive damages against an insurance company, established the following rationale for awarding punitive damages against an insurance company:

> This case demonstrates the necessity of awarding punitive damages when an insurance company refuses to pay a legitimate claim, and bases its refusal to honor the claim on a reason clearly contrary to the express provisions of its own policy. If an insurance company could not be subjected to punitive damages it could intentionally and unreasonably refuse payment of a legitimate claim with veritable impunity. To permit an insurer to deny a legitimate claim, and thus force a claimant to litigate with no fear that claimant's maximum recovery could exceed the policy limits plus interest, would enable

> the insurer to pressure an insured to a point of desperation enabling the insurer to force an inadequate settlement or avoid payment entirely. . . .
>
> Of course, if an insurance company has a legitimate reason or an arguable reason for failing to pay a claim, punitive damages will not lie . . . .

The operative sentence for the purpose of this opinion is the last sentence, "Of course, if an insurance company has a legitimate reason or an arguable reason for failing to pay a claim, punitive damages will not lie . . . ." The application of this sentence to the stipulation which we earlier quoted would be sufficient to affirm the trial court's grant of partial summary judgment on Heinrich's claim for punitive damages. After all, the stipulation states that "[o]n the basis of inspections, interviews with the Heinriches, and police reports, Allstate concluded that the pool damage was unlikely to be the result of the suspected vandalism, but rather was long-term damage from rotting from below-surface water damage connected with prior improper pool emptying, shifting ground and freeze damage ." The stipulation establishes that Allstate investigated the claim of the Heinriches, their insureds, and concluded that the cause of the damage to the swimming pool was not vandalism, which its homeowners' policy covered, but other causes, *i.e.*, "long-term damage from rotting from below-surface water damage connected with prior improper pool emptying, shifting ground and freeze damage not covered by the policy." Indeed, the record reveals that earlier in 1990, the Heinriches filed a claim for damage to their pool's vinyl lining caused by freezing water, and that Allstate denied coverage for that damage. The Heinriches demonstrated their acquiescence in Allstate's denial of their claim by the husband's buying a vinyl patch and repairing the lining which the freezing water had damaged. Thus the stipulation establishes to this Court's satisfaction that Allstate had an arguable reason to deny the Heinriches' claim for vandalism which they made of December 10, 1990.

Heinrich argues that notwithstanding the above quoted stipulation, "she did not stipulate that Allstate's denial of her claim constituted a legitimate, arguable reason for denial." She then argues that in *Andrew Jackson Life Ins. Co. v. Williams*, 566 So. 2d 1172 (Miss. 1990), the Mississippi Supreme Court held that "the matter of punitive damages can be a jury question of fact, notwithstanding the possibility that the claim for benefits was denied on an arguable basis." If Heinrich is to prevail on this her first issue, she must do so on the basis of this argument, *i.e.,* "the matter of punitive damages can be a jury question of fact, notwithstanding the possibility that the claim for benefits was denied on an arguable basis."

*Andrew Jackson Life Ins. Co. v. Williams* involved a claim for benefits made by an employee whose employer had permitted two of Andrew Jackson's agents to solicit policies from its employees during working hours. *Id.* at 1174. The evidence established some egregious representations which these agents made to persuade the employees to convert their coverage to Andrew Jackson. One of the agent's representations was that the employee could immediately terminate existing life insurance coverage because the employee and employee's spouse would be immediately covered under Andrew Jackson's policy. *Id.* Williams' wife died soon after he applied for coverage and after he had canceled his previous coverage. *Id.* at 1175. Andrew Jackson denied coverage for reasons that seemed reasonable and thus arguable, but its agents' gross mis-representations provided the foundation for Andrew Jackson's arguable reasons to deny coverage. *Andrew Jackson Life Ins. Co.,* at 1187.

The trial judge granted a punitive damages instruction, and the jury returned a verdict of an award of $250,000 for punitive damages against Andrew Jackson. *Id*. at 1177. The Mississippi Supreme Court affirmed the trial court's granting of the punitive damages instruction and the amount of the punitive damages award. Heinrich correctly notes that the Mississippi Supreme Court opined that "the matter of punitive damages can be a jury question of fact, notwithstanding the possibility that the claim for benefits was denied on an arguable basis." We quote more fully from the opinion:

> Conversely, Mississippi law has evolved to a point of recognition that submission of the punitive-damages issue may be submitted -- notwithstanding the presence of an arguable basis. *Aetna Cas. & Surety Co.*, 487 So. 2d at 834 ("[U]nder some contrived or specious defense, an insur[er] may be entitled to have the jury pass upon the issue of liability under the contract, yet not thereby insulate itself against [submission of] a punitive damage claim based upon bad faith."); *Blue Cross & Blue Shield of Miss*., 466 So. 2d at 833 (Hawkins, J., denying petition for reh'g) ("There may be . . . reasons not yet encountered which will give an insurance carrier a defense on the contract itself, and yet nevertheless the carrier should be subject to [submission of] a bad faith claim."). This Court will not attempt to hypothesize "all such extreme factual situations" which could constitute exceptions. *Aetna Cas. & Surety Co*., 487 So. 2d at 834. Some examples may be conceived through inference from, and analogy of, factual circumstances attendant cases which were previously before this Court.

*Id.* at 1186 (alterations in original).

The Mississippi Supreme Court then discussed the opposite of this circumstance, *i.e.,* "an act of bad faith alone cannot be deemed sufficiently tortious to warrant imposition of punitive damages liability." *Id.* at 1187. For example:

> "[O]rdinary torts, the product of forgetfulness, oversight, or the like, do not "rise to the heightened level of an independent tort" which warrant imposition of punitive-damages liability. *State Farm Fire & Cas. Co.*, 477 So .2d at 250, *quoted in Pioneer Life Ins. Co. of Ill*., 513 So. 2d at 930 (case in which this Court reversed punitive-damages award because insurer's "failure to pay the claim ... was a mere clerical error and an honest mistake"); *Mississippi Farm Bureau Mut. Ins. Co*., 492 So. 2d at 932-33; *Aetna Cas. & Surety Co*., 487 So. 2d at 832-33; *see American Sec. Ins. Co*., 486 So. 2d at 1227 ("[C]lerical error or honest mistake" constitutes a defense to imposition of punitive damages "though objectively speaking the insurer has no arguable reason for failure to honor a just claim."); *Southern United Life Ins. Co*., 481 So. 2d at 769 (Notwithstanding absence of an arguable basis, punitive damages may be unjustified in a case involving an "honest mistake or oversight--ordinary or simple negligence--not reaching the heightened status of an 'independent tort."); *Consolidated Am. Life Ins. Co. v. Toche*, 410 So. 2d 1303, 1304 (Miss.1982) ("[P]unitive damages will not lie ... in cases of simple negligence involving miscalculation of premiums or benefits").

*Andrew Jackson Life Ins. Co.,* at 1187-88 (alterations in original). We conclude our consideration of *Andrew Jackson* with this quotation about "bad-faith-*plus*":

> Restated, the law requires a finding of "bad faith-*plus* "-- based upon a preponderance of the evidence -- before punitive damages may be awarded. Generally speaking, this simply means that punitive damages may not be awarded "in the absence of finding an independent tort separate from the breach of contract."

*Id.* at 1188 (citations omitted). The Mississippi Supreme Court then recited various examples of "bad faith-*plus*."

With this discussion of *Andrew Jackson* for background we consider what Heinrich offered to counter Allstate's motion. She offered:

> 1. Plaintiff Julie Heinrich's affidavit in which related: (1) reporting to the Greenwood Police Department the vandalism and attempted burglaries at her and her late husband's home on December 12 and 15, 1991, (2) her report of the vandalism to Bruce Haralson, "who came to [their] residence and took pictures of the vandalism" but made no other reply, (3) her automobile trip to Jackson to discuss her claim with a representative of Allstate and to present a letter from Bill Barrentine in which he wrote that "the pool damage was caused by vandalism," and (4) her subsequent submission of police reports about the attempted burglaries and actual vandalism on December 12 and 15, which Allstate insisted on getting.

> 2. Affidavit of Greenwood Police Officer Stacy Walker in which he stated that he had investigated "an attempted burglary at [affiant's] residence on December 12, 1990," and to which he attached a copy of his case report which related "the results of [his] investigation." This report describes attempted burglary as the primary offense without reference to any kind of vandalism.

> 3. Affidavit of Greenwood Police Officer Mark W. Miller in which he stated that he had investigated "an attempted burglary at [affiant's] residence on December 15, 1990," and to which he attached a copy of his case report which related "the results of [his] investigation." This report stated that "[t]he latest incident involved a damaged swimming pool lining . . . ."

To support its motion for partial summary judgment, Allstate submitted the affidavit of its senior

claims adjuster, Bruce Haralson, who described in some detail his investigation of the Heinriches December 10, 1991, claim for this damage to their swimming pool caused by vandals and earlier claims as well. We quote the paragraph in which he related his conclusion about the cause of damage to the Heinrich's swimming pool:

> After my inspection of the damages on [December 13, 1990] I concluded that water in the pool had gotten behind the liner as a result of earlier hole or holes in the liner that the insured may not have repaired or did not properly repair. Further, the damage to the wood layer forming the wood wall on one side of the pool showed evidence of long term damage likely, making it apparent that water had been behind the wall for some time. Cracks around the pool perimeter also indicated that there was some shifting off the ground; the insured further documented this by stating that there was other such damage to the interior, for example walls showing settlement cracks.

We now return to the task of determining whether "there are issues to be tried" with regard to Heinrich's claim for punitive damages against Allstate. The law determines what those issues are. Our understanding of *Andrew Jackson* is the following: Without bad faith on the part of the insurer, there can be no punitive damages, but even bad faith alone may not justify the award of punitive damages, *i.e.,* where the bad faith results from mere clerical error. For an insurer's bad faith to justify the award of punitive damages, it must be accompanied by "*more*," that is to say, an independent tort separate from the breach of contract.

Did the affidavits which Heinrich submitted in opposition to Allstate's motion for partial summary judgment on the issue of its liability for punitive damages create material issues of fact about Allstate's bad faith plus an independent tort? Heinrich's pleadings and response fail to suggest in what manner Allstate committed a tort independently of the breach of the homeowner's insurance policy with which Heinrich has charged it. We think that at most Heinrich's argument on this issue is that Allstate ought to have accepted unquestioningly her claim, and because it did not accept it, Allstate was guilty of bad faith. Ergo, Allstate's bad faith, and only its bad faith, merited an award of punitive damages.

Such an argument ignores the premise with which we began our consideration of this issue, which was that there can be no bad faith if the insurer has an arguable reason to deny coverage. Clearly Allstate had arguable reasons to deny Heinrich's claim. Bruce Haralson expressed those reasons in the paragraph of his affidavit which Allstate submitted to support its motion for partial summary judgment on the issue of punitive damages. We find Heinrich's affidavits relevant to the issue of whether any of the damage to her swimming pool was the result of vandalism -- but nothing more. The issue of whether the damage to the swimming pool was caused by an act of vandalism was reserved for resolution by the trial which ensued.

We conclude our consideration of this issue by holding that Heinrich failed to demonstrate that there was a material issue of fact which was relevant to the issue of whether Allstate could be liable for the payment of punitive damages to her. Thus, we affirm the trial court's granting of Allstate's motion for partial summary judgment on the issue of punitive damages.

**II. The trial court erred in sending the jury out at the close of Appellant's case in chief, and granting a directed verdict in favor of Appellee without a motion for directed verdict having been made.**

Heinrich attempts to merge two matters into this one issue. At first, Heinrich questions the propriety of the lower court directing a verdict on its own initiative for the defendant. Heinrich then attempts to argue that sufficient factual issues existed at the close of her case-in-chief so as to preclude a directed verdict. As a result, we shall address both matters.

Heinrich alleges that because Allstate made no motion for a directed verdict then the trial court committed reversible error by directing a verdict of its own accord. The pertinent portion of the discussion transpiring at the court below is as follows:

> THE COURT: Well, Counsel, I think what we've got here is a failure of proof. I think--even assuming that there is sufficient evidence to go forward on the issue of vandalism, and I don't think there is, but we'll assume that for the sake of the motion, there's not proof as to her damages. Mr. Barrentine did not testify that the damage shown in these photographs resulted from any act of vandalism and specifically from this hole that you say was punched into the vinyl liner. He didn't testify to that. He didn't even testify as to how much it would cost to repair that hole.

> COUNSEL FOR PLAINTIFF (Mr. Gandy): Your Honor, if I recall, I believe the record will show, that upon their objection, we approached the bench and I believe, Your Honor, the instruction to me was the only thing he can say is how much it would cost to put that patch on there. That's the reason I elected not to--

> THE COURT: I said at that point, at this point. He was never asked whether he made an examination to determine whether any of the other damage reflected in the photographs that were admitted into evidence resulted from this hole that you say was punched into the vinyl liner.

> I think the law compels that I direct a verdict for the defendant. I don't think I've got any choice, and I'm going to order that that be done.

The Mississippi Supreme Court has dealt with a similar situation in *South Central Bell Telephone Co., Inc. v. Parker,* 491 So. 2d 212, 215 (Miss. 1986). In *Parker,* the trial judge directed a verdict when the record did not reflect that the court reporter had transcribed a motion for directed verdict. *Id.* However, the parties for whom court directed the verdict alleged that they moved for a directed verdict during an unrecorded discussion. *Id.* The supreme court observed:

It is obvious from the record here that the lower court and the attorneys were under the impression that motions for directed verdicts had been made, but that the motions were not recorded by the court reporter. The appellants' attorney did not object to the manner in which the directed verdicts were granted, or that no motions for directed verdicts were made by the appellees' attorney.

*Id.* The supreme court "carefully scrutiniz[ed] the record and discussions between the court and the attorneys" and held that the trial court "properly entered" the directed verdicts even though the motions for directed verdicts did not appear in the record. *Id.* at 215-16.

In the case at bar, Allstate does not contend that it formally made a motion for directed verdict after Heinrich rested her case. However, we repeat a portion of what we quoted earlier from the record after Heinrich had rested:

> THE COURT: I'm going to let him take up his motion here in the courtroom so we don't have to go back there where we'll be kind of crowded, and we can do just as easily here.

> MR. McCOY: It's going to be very short, Your Honor.

Pursuant to this and the rest of the record from which we earlier quoted, we see that Allstate's counsel intended to move for a directed verdict and that Heinrich's counsel responded to the trial court's questions and expressions of concern about the failure of her proof of damages as though he knew and understood that Allstate had in fact moved for a directed verdict. Quite clearly, Heinrich's and Allstate's counsel and the trial court were aware that a directed verdict was being granted in favor of Allstate, yet Heinrich's counsel failed to object to the trial court's granting Allstate's motion for directed verdict in the absence of Allstate's having insured that its motion for directed verdict was included in the record.

In *Hill v. Acord,* 259 So. 2d 472, 474 (Miss. 1972), the Mississippi Supreme Court refused to reverse the trial court when it erroneously set aside a default judgment because the appellant did not make a timely objection after the court made its ruling. Likewise, in the case at bar, Heinrich's failure to object timely precludes her from raising this issue on appeal. *See Dillon v. Allen-Parker Co.,* 78 So. 2d 357, 360 (Miss. 1955).

> **III. The trial court erred in failing to allow the jury to determine whether Appellant's pool damage was caused by vandalism or natural causes, which constituted a question of fact and not a question of law.**

In response to Heinrich's argument on this issue, Allstate emphasizes that in ruling on its motion for directed verdict, the trial court assumed that an issue of fact had been created concerning causation.

The trial court granted a directed verdict for Allstate because "[t]here's not proof as to her damages." In *Thomas v. Global Boat Builders & Repairmen, Inc.*, 482 So. 2d 1112 (Miss. 1986), David Thomas, owner of a shrimp trawler, sued a boat repairer and an electric company for damages which the trawler sustained when it came into contact with a power line while it was being repaired and damages for emotional trauma he experienced from his witnessing a carpenter lying unconscious after he had been electrocuted. *Id.* at 1114. The two tests for determining the amount of damage to Thomas's trawler were the value before and the value after the damage and the cost of repair. *Id.* At trial, Thomas testified that the boat's value was $68,000 before the accident, but the trial court sustained the defendants' objection to that testimony. *Id.* Thomas offered absolutely no evidence about the value of the boat after it had been damaged; neither did he offer evidence of the cost of repairing the boat. *Id.* At the conclusion of plaintiff Thomas's case, the trial court granted the defendants' motions for directed verdicts because Thomas had failed to establish his damages under either test for determining damage to personal property. On appeal, the Mississippi Supreme Court affirmed the trial court's directed verdict for the defendants. *Id.* at 1117. That court observed:

> Therefore we must conclude that even if Thomas's testimony as to the fair market value of his boat just prior to the accident was competent, he only furnished a part of the equation. No attempt was made to complete it. The person who is "it" in "Pin the Tail on the Donkey" knows as much about the task he is called upon to perform as this jury would have known had it been asked to assess damages and fair compensation in this case. When the plaintiff, as in this case, only puts on proof of one of the factors in the equation for assessing damages, a circuit judge has no choice but to direct a verdict for the defendant. There was no guide whatever given to the jury to make a fair assessment of damage.

*Id.* at 1116. The supreme court next described a plaintiff 's burden to establish her damages as follows:

> When a plaintiff has available to [her] sources and means whereby damages may be calculated to a fair degree of certainty, as in this case, and [she] does not secure for trial such available proof, the circuit judge is perfectly correct in presuming if the plaintiff had any actual proof of damages [she] would have come forward with it. And, in such a case as this, the circuit judge was unquestionably correct in directing a verdict for the defendants.

*Id.* at 1117.

*Thomas* controls our decision on this issue. The record demonstrates that the trial court's finding that Heinrich failed to prove her damages was correct. So then was its directing a verdict for Allstate on this ground alone. It matters not whether the damage to Heinrich's pool was the result of vandalism or natural causes without proof of damages.

**IV. The trial court erred in sustaining Appellee's objections to all of Appellant's testimony by Appellant's lay witnesses and expert witness relative to the cause of the pool damage, the cost to repair the pool at the time of the vandalism and the cost to repair the pool damage at the time of trial.**

In this issue, Heinrich consolidates various matters in a piecemeal. Accordingly, we address each matter which she raises. First, Heinrich notes that she and her husband purchased a policy from Allstate to provide coverage for their swimming pool. Heinrich alleges that Bruce Haralson did not adequately inspect the damage nor did he examine police reports filed by the Heinriches. She cites as error the trial court's denial of testimony relating to burglaries in the neighborhood and attempted burglaries at the Heinriches' home. On these points, we defer to "the trial judge as to whether or not such testimony is material and meets the test of substantial similarity of conditions to the issue." *Mississippi Power & Light Co. v. Shepard,* 285 So. 2d 725, 740 (Miss. 1973). Moreover, any argument as to causation becomes moot because of Heinrich's failure to prove the value of her damages.

### V. The trial court erred in denying Appellant's Motion for New Trial.

Concerning this issue, we note that a motion for a new trial is addressed to the sound discretion of the trial court. *Bell v. City of Bay St. Louis,* 467 So. 2d 657, 660 (Miss. 1985). Moreover, such a motion "may be granted only if the trial judge in the exercise of his sound discretion is of the opinion that the verdict is contrary to law or the weight of the evidence." *Id.* For the reasons set forth in this opinion, we find that the trial court properly denied Heinrich's motion for new trial.

## IV. Conclusion

This Court finds that Allstate had arguable reasons to defend Heinrich's claim for damage to her swimming pool under the homeowners' policy which it issued to her and her late husband. Those arguable reasons were: (1) that the damage resulted from an earlier freezing of the water in the pool and (2) rotting wood in the walls and supports of the pool's walls which rotting could not have been caused by the one hole in the pool's lining which Heinrich claimed had been caused by an act of vandalism. Allstate would have been vulnerable to an award of punitive damages only if it had dealt in bad faith with the Heinriches and had committed a tort in conjunction with its bad faith denial of their claim. Heinrich's complaint at best charged Allstate with bad faith; it did not charge Allstate with having committed a tort in conjunction with its bad faith treatment of its insureds, the Heinriches. The evidence which Heinrich submitted in opposition to Allstate's motion for partial summary judgment rose no higher than to support her claim that a vandal had damaged the lining of the swimming pool. It did not support the proposition that Allstate had dealt in bad faith with her,

much less that Allstate had done more by committing some tort independent of the bad faith itself. Thus, we find that the trial court correctly granted Allstate's motion for partial summary judgment on the issue of punitive damages.

The remainder of Heinrich's issues attack the propriety of the trial court's granting a directed verdict after she rested her case in chief. Even though Allstate failed to move for a directed verdict formally for the record, a review of what transpired in the record after Heinrich rested her case satisfies this Court that Heinrich's counsel understood that he was opposing Allstate's motion for directed verdict and that he responded to the trial court's questions and concerns about granting Allstate's motion for directed verdict as well as the state of the record would permit him to do. Of equal importance is the fact that Heinrich's counsel did not object to the trial court's granting Allstate's motion for directed verdict because Allstate had failed to move specifically for it.

The trial court's reason for granting Allstate's motion for directed verdict was Heinrich's complete failure of proof of the value, or amount, of the damage to the swimming pool which vandalism caused. We affirm the trial court's granting Allstate's motion for directed verdict on the basis of Heinrich's failure to prove those damages. Heinrich's failure to prove the value of the damage to the swimming pool renders moot all issues about whether the trial court erred by not allowing the jury to decide if vandalism caused the damage to the Heinrich's swimming pool. Had the trial court submitted this issue to the jury, its twelve members would have been playing pin the tail on the donkey with the amount of their verdict had they found that the damage to the pool was caused by vandalism. We affirm the final judgment of the trial court.

**THE JUDGMENT OF THE CIRCUIT COURT OF LEFLORE COUNTY IS AFFIRMED. APPELLANT IS TAXED WITH THE COSTS OF THIS APPEAL.**


**FRAISER, C.J., BRIDGES AND THOMAS, P.JJ., BARBER, DIAZ, KING, McMILLIN, PAYNE, AND SOUTHWICK, JJ., CONCUR.**