482 So.2d 1112 (1986)
David THOMAS
v.
GLOBAL BOAT BUILDERS & REPAIRMEN, INC., & Lawrence E. Steelman & Mississippi Power Company.
No. 55184.
Supreme Court of Mississippi.
January 8, 1986.
Rehearing Denied January 29, 1986.
*1113 Harry P. Sneed, Jr., Wittmann & Sneed, Gulfport, for appellant.
H. Rodger Wilder, Eaton, Cottrell, Galloway, Lang & Stone, Richard P. Salloum, Franke, Rainey & Salloum, James O. Dukes, Bryant, Stennis & Colingo, Gulfport, for appellees.
Before PATTERSON, C.J., and HAWKINS and ROBERTSON, JJ.
HAWKINS, Justice, for the Court:
David Thomas appeals from a judgment upon directed verdict in favor of the defendants in a suit against Global Boat Builders & Repairment, Inc., Lawrence E. Steelman, the Mississippi Power Company, and St. Paul Fire and Marine Insurance *1114 Company in the circuit court of the First Judicial District of Harrison County.
The circuit judge directed a verdict in favor of the defendants because Thomas had failed to prove damages to his shrimp trawler, and that he had no cause of action against any of the defendants for emotional trauma in witnessing a worker on his boat being shocked unconscious.
Finding the ruling correct, we affirm.

FACTS
On February 26, 1981, Thomas took his 60-foot shrimp trawler, the "Miss Stephanie," constructed in 1940, to Global's yard for repairs. As they agreed, Global washed and scraped her bottom, following which Thomas and a carpenter, David George, were making the repairs.
At Thomas's suggestion, "Miss Stephanie" was raised two blocks high rather one, both Thomas and the Vietnamese manager of Global being unmindful of the fact that in so doing they were placing a portion of "Miss Stephanie" just four inches from a naked power line.
"Miss Stephanie" was well beyond menopause and in addition to the buffeting of age and normal use, she had suffered two accidents the previous two years which rendered her unseaworthy.
On March 3, 1981, the wind blew, and the 13,200 volt power line connected with "Miss Stephanie." Thomas escaped injury; but George was shocked unconscious. Fortunately, he was later resuscitated.
For the jolts of current which passed through and damaged "Miss Stephanie," Thomas sued Global, Mississippi Power Company, an officer of Global, and the insurance carrier of Global. Thomas sought actual and punitive damages, and also damages for the emotional trauma he experienced from witnessing George lying unconscious, perhaps dead.
Thomas made no repairs to "Miss Stephanie" following March 3, 1981, but later sold her.
Thomas brought two experts to trial to testify about what kind of damage the electrocution caused "Miss Stephanie." One of them had never seen her.
On the issue of damages, Thomas testified the value of his boat when he took her in for repairs was $68,000, but on the objection of the defense, it was sustained. Neither Thomas nor any of his witnesses attempted to place a value on the boat following the accident. Nor, did Thomas offer any testimony as to the cost of repairs to "Miss Stephanie," and that they were reasonable and necessary as a result of the currents of electricity passing through her before the power was cut off on March 3. Clyde Leavitt, a marine engineer, did testify that her compass, other equipment and other sections of the boat were damaged as a result of the accident. His testimony was rather general.
When Thomas rested, a patient circuit judge sustained the motions for a directed verdict, stating in pertinent part:
The Court finds that, under the law in the State of Mississippi, there are two tests in determining damage to personal property, as I indicated, one is the before and after rule, and the other one, that comes into play if the property is repairable, would be the cost of repair... .
... Whenever you come into Court you have to establish that to the other side before the Jury can consider it. In this instance, there were no repairs and the burden was upon the plaintiff at that time to show by competent proof that the vessel was or was not repairable. If it were repairable, to show by competent proof, what items needed to be repaired as a result of the contact and what the cost of those items were. That was not offered and that was not done in this case. Given that then the Court has no alternative but to direct a verdict in this case against the Plaintiff, Mr. Thomas, and in favor of the three defendants. [R.V, pp. 608-609]

LAW
On the main issue of whether Thomas offered sufficient proof of damage to sustain *1115 a directed verdict, we agree with the circuit judge.
In Harper v. Hudson, 418 So.2d 54, 57 (Miss. 1982), Justice Broom, speaking for this Court, succinctly stated:
The general rule is that if there is any remaining value to the damaged property ..., then the measure of damages is the difference in the value immediately before the casualty or loss and the value immediately after the damage or injury to the property... . Of Course, if the property is totally destroyed and rendered absolutely valueless in the accident or casualty, the damages would be the value of the property at the time of such destruction.
In Teledyne Exploration Co. v. Dickerson, 253 So.2d 817, 819 (Miss. 1971), we held: "Where the injury to property is repairable, the cost of repairs is a proper measure of damages."
Where the costs of repairs are relied upon as a measure of damages, the proof must establish (1) that the repairs were necessary as the result of the wrongful act, and (2) that the cost was reasonable. National Fire Ins. Co. of Hartford v. Slayden, 227 Miss. 285, 85 So.2d 916 (1956); Brown & Root, Inc. v. Continental Southern Lines, Inc., 228 Miss. 15, 87 So.2d 257 (1956); Bryan Bros. Packing Co. v. Grubbs, 251 Miss. 52, 168 So.2d 289 (1964).
Restatement of Torts, 2d Ed., § 928, states:
§ 928. Harm to Chattels
When one is entitled to a judgment for harm to chattels not amounting to a total destruction in value, the damages include compensation for
(a) the difference between the value of the chattel before the harm and the value after the harm or, at his election in an appropriate case, the reasonable cost of repair or restoration, with due allowance for any difference between the original value and the value after repairs, and
(b) the loss of use.
As may be gleaned from the above rules, fair compensation to recover the loss on personal property which has been damaged, but which can be repaired to a functional use, encompasses two elements: (1) cost of repairs, and (2) depreciation, if any, following repairs.
On repairable personalty, whether the plaintiff puts on proof under the before and after rule, or cost of repairs plus depreciation, the result should be the same. In determining what a repairable automobile is worth, for example, any expert must first calculate and determine the cost of repairs to make it functional. Then, he must determine whether, following the repairs the car still will not be worth the money it was worth before the accident, and how much less. He then adds the cost of repairs plus the depreciation caused by the accident, even with repairs, in determining the after value. Pursuing the illustration, assume an automobile worth $10,000 is in an accident, but can be repaired. The expert determines that it will take $5,000 to repair it, and after repair it will still be worth $1,000 less than before the accident. The expert concludes its after value is $4,000. The plaintiff is damaged $6,000.
Or, in such case, the plaintiff may go at the matter directly, prove by the expert that it will take $5,000 to repair the car, but that following the repair it will still be depreciated in value $1,000 from what it was worth before the accident. On a car worth $10,000 before the accident, the damages under either approach come to the same figure. Indeed, under either approach the same reasoning is used in calculating fair compensation.
Of course, if the repairs to damaged personalty will make it worth just as much as it was before an accident, a calculation of the cost of reasonable repairs caused by the accident is all that is needed. In such case, however, if the plaintiff should prove his case by an expert under the before and after rule, it will certainly be made clear from the expert's testimony that his sole basis for determining its after value was the cost of repairs. Cases following both *1116 approaches of the above example are Merrill v. Tropoli, 414 S.W.2d 474 (Tex.Civ. App. 1967); Krueger v. Steffen, 30 Wis.2d 445, 141 N.W.2d 200 (1966); and Halferty v. Hawkeye Dodge, Inc., 158 N.W.2d 750 (Iowa 1968); also, Ishee v. Dukes Ford Co., 380 So.2d 760 (Miss. 1980).
We make these observations at risk of appearing to belabor the obvious because of the frequency in which we find plaintiffs failing to make proper proof of damages to personal property.
In this case the circuit judge erred in sustaining the objection to the opinion of Thomas, the owner, that his boat was worth $68,000 before the accident. However weak this evidence may have been, it was nevertheless competent. See Meredith v. Hardy, 554 F.2d 764 (5th Cir.1977). This alone would not have benefitted Thomas, however, because he was not competent to testify what his boat was worth following the accident unless he had independent expertise to determine whether the electricity damaged his boat, the specific damage done, and the reasonable cost of repairs necessary to repair such damage. See: Frizell v. Guthrie, 222 Miss. 501, 76 So.2d 361 (1954); Bryan Bros. Packing Co. v. Grubbs, supra; Nail v. Hiers, 116 Ga. App. 522, 157 S.E.2d 771 (1967); Wylie v. Czapla, 168 Neb. 646, 97 N.W.2d 255 (1959); Elliott v. Swift & Co., 151 Neb. 787, 39 N.W.2d 617; KRCMAR v. Wisconsin River Power Co., 270 Wis. 640, 72 N.W.2d 328, 331 (1955); Kay-Noojin Development Co. v. Kinzer, 259 Ala. 49, 65 So.2d 510 (1953).[1]
Moreover, Thomas made no attempt to prove the value of "Miss Stephanie" following the accident, no attempt to assess any cost of repairs, and of course no attempt to prove that any such repairs were reasonably necessary as a result of "Miss Stephanie's" overdose of electricity.
Therefore we must conclude that even if Thomas's testimony as to the fair market value of his boat just prior to the accident was competent, he only furnished a part of the equation. No attempt was made to complete it. The person who is "it" in "Pin the Tail on the Donkey" knows as much about the task he is called upon to perform as this jury would have known had it been asked to assess damages and fair compensation in this case. When the plaintiff, as in this case, only puts on proof of one of the factors in the equation for assessing damages, a circuit judge has no choice but to direct a verdict for the defendant. There was no guide whatever given to the jury to make a fair assessment of damage.
Thomas argues that even if he did not prove his damages as required by accepted rules, at least he was entitled to go to the jury on nominal damages. One answer to this is that if he was only entitled to nominal damages in any event, then he was not hurt by a judgment for the defendants. Thomas, however, misses the point. This was not a case of proof of nominal damages, it was a case of nominal proof of damages which could have been ascertained to some fair degree of certainty.
This was not one of those cases in which by the very nature of the injury or of the property damages are extremely difficult to prove. In any case a plaintiff is required to place into evidence such proof of damages as the nature of his case permits, with as much accuracy as it reasonably possible for him. See: Merritt v. Dueitt, 455 So.2d 792 (Miss. 1984); Conrad v. Dorweiler, 189 N.W.2d 537 (Iowa 1971); Wilson v. Farmers Chemical Ass'n., 60 Tenn. App. 102, 444 S.W.2d 185 (1969). Or, in the words of an English decision:
As much certainty and particularity must be insisted on ... . as is reasonable, having regard to the circumstances and to the nature of the acts themselves by which the damage is done. To insist upon less would be to relax old and intelligible principles. To insist upon more would be the vainest pedantry. [Ratcliffe v. Evans, (1892) 2 Q.B. 524 (C.A.)]
*1117 When a plaintiff has available to him sources and means whereby damages may be calculated to a fair degree of certainty, as in this case, and he does not secure for trial such available proof, the circuit judge is perfectly correct in presuming if the plaintiff had any actual proof of damages he would have come forward with it. And, in such a case as this, the circuit judge was unquestionably correct in directing a verdict for the defendants.
As to Thomas's claim for damages for the emotional trauma he experienced in seeing George unconscious, the circuit judge was likewise correct in dismissing his complaint. See: Entex v. McGuire, 414 So.2d 437 (Miss. 1982); Sears Roebuck & Co. v. Devers, 405 So.2d 898 (Miss. 1981); Sears Roebuck & Co. v. Young, 384 So.2d 69 (Miss. 1980); and First National Bank v. Langley, 314 So.2d 324 (Miss. 1975).
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
NOTES
[1] This rule would not prevent the owner, or any other witness, from testifying as to damaged portions or parts of personal property apparent upon visible examination.