ISHEE, J.,
for the Court:
¶ 1. In 2012, Dolly E. Gray filed suit against Gramme Law Firm of MS, P.C. and Framme Law Firm, P.C. (Framme) for legal malpractice. Gray asserted that Framme allowed the statute of limitations to run on her negligence claim against the City of Durant for certain damages suffered in her home during an electrical surge in 2008. At trial, the Holmes County Circuit Court granted Framme’s motion for a directed verdict regarding compensatory damages for repair or replacement of allegedly damaged items in the home, emotional distress damages, and punitive damages. The jury returned a verdict in favor of Gray for $4,308 — the cost of rewiring Gray’s home. Aggrieved, Gray appeals, claiming the circuit court erred by granting the directed verdict and allowing one of Framme’s witnesses to testify in support of the motion for a directed verdict. Finding no error, we affirm.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 2. Residents of Durant, Mississippi, receive their electrical services directly from the City. Gray, a Durant resident, testified that on December 4, 2008, she suffered a *432 massive electrical surge in her home, causing several loud noises, the smell of electrical smoke throughout the home, and irregular electrical activity in the home’s electrical products. Accordingly, she contacted electrician Robert Teague.
¶ 3. Teague inspected Gray’s home on the evening in question and could not find a problem inside the house. After examining the electrical supply outside of the home, Teague informed Gray two wires bringing electricity into the home were malfunctioning, causing the electrical surges. Gray then contacted the City, who sent the city electrician, Tommy Fri-zell, for an inspection.
¶ 4. Frizell and his crew arrived the day after the incident and observed the faulty wires noted by Teague. They corrected the problem. Frizell and Gray then went through the home to inspect the electrical items for damage. At the time, Frizell located five or six damaged items. He instructed Gray to submit a list of those items to the city clerk.
¶ 5. Gray complied, and on December 15, 2008, she provided the city clerk a handwritten note that merely listed one computer, one photo printer, one microwave, and six surge protectors not working in her home. She signed and dated the note at the bottom and listed her telephone number.
¶ 6. On May 26, 2009, Gray submitted to the City a formal typed and signed letter wherein she summarized the events leading up to that date. She attached a second list of allegedly damages items, totaling seventy-six items with a full replacement value of $37,000. Gray testified that she arrived at this figure after contacting various sales centers and obtaining purchase prices for new products to replace the allegedly damaged items. She included several other attachments, such as Teag-ue’s service bills for inspection and repair to the wiring in the home and an article related to similar electrical incidents.
¶ 7. Thereafter, the City’s third-party administrator, Mississippi Municipal Service Company (MMSC), sent an adjuster, Terry Woods, to inspect Gray’s home and the allegedly damaged items. Woods reduced the list provided by Gray to fourteen inoperable items. In June 2009, MMSC sent a letter to Gray denying liability on behalf of the City and requesting that Gray present additional proof of her loss with respect to the replacement values listed in her damages report.
¶ 8. Gray then contacted a prepaid legal service (PPL) to which she had been paying $7.97 twice a month for some time. PPL provides a legal-insurance service to customers whereby clients may pay a certain amount of money per month in exchange for future legal services. PPL employs a tiered system, providing various future services to clients at corresponding monthly rates. Gray was enlisted on a T-1 level, providing her with basic services, such as unlimited telephone conversations with an attorney and legal letters written on her behalf. The tiered system graduates to level T-5, with attorneys filing suit and representing the client in the suit.
¶ 9. PPL assigned Gray a case number and an attorney — Steven Burt with Fram-me. Burt then contacted Gray and they discussed her issues. Gray sent Burt the paperwork and information she had retained until that point. Burt informed her he was authorized to write the City a letter on her behalf but that to sue the City would be significantly more money. It is disputed as to whether or not Gray indicated she was willing to spend the extra money to file a suit. Regardless, Burt mailed MMSC a demand letter on Gray’s behalf in August 2009 and requested that the City reinvestigate Gray’s claim. *433 In the letter, Burt directed that all findings be mailed to Gray directly and provided her home address.
¶ 10. When Gray did not receive any further communications from MMSC, she wrote them a second letter in December 2008. On February 9, 2012, Gaynell Johnson, a claims representative with MMSC, responded to Gray’s letter. Therein, he told her that the one-year statute of limitations had run on her claim. However, he offered her a $8,000 settlement in good faith.
¶ 11. Gray immediately called PPL. PPL attorney Zora Frith calculated the statute of limitations. She determined that Gray’s May 2009 correspondence with MMSC had served as a notice of the claim pursuant to the Mississippi Tort Claims Act (MTCA). She also found that MMSC’s June 2009 letter denying the claim tolled the statute of limitations by almost a month. Ultimately, Frith decided that the statute of limitations would not have run until April 22, 2010. Therefore, she assigned Gray a T-5 referral attorney, Rod Nixon.
¶ 12. Nixon met with Gray for approximately ten minutes. He then improperly advised her that the statute of limitations had run on her MTCA claim and suggested that she settle with the City for the $8,000 previously offered. Unhappy with the determination, Gray contacted the member-resolution division of PPL. However, she also took Nixon’s advice and settled with the City.
¶ 13. She then filed suit on November 4, 2010, alleging attorney malpractice by Nixon and Framme, on behalf of Burt, and requesting compensatory and punitive damages. Nixon accepted responsibility for the mistake regarding the statute of limitations, and settled with Gray prior to the close of trial. Framme, however, continued to litigate the suit.
¶ 14. In May 2012, the trial began. Nixon, Johnson, Teague, and Gray testified first. Gray then called Burt as an adverse witness. She also called Lawrence H. Framme III, a partner in Fram-me, and James F. Noble III, who was tendered as an expert in attorney conduct. Gray and Teague were the only witnesses to testify to actual damages.
¶ 15. Teague could only testify regarding the cost of repair and rewiring the home. Gray testified as to the cost of the replacement value of the items she listed as being damaged. However, her testimony merely reflected that she called vendors and asked them what a new product would cost to replace the type of product that was damaged in the electrical surge. Her testimony did not take into account the value of the allegedly damaged items at the time of the electrical surge minus the value of the item after the electrical surge. Moreover, Gray testified that many of the items on her list were still in her house and still functioned, but functioned in a different way. She was not able to specifically address which items were completely unusable and which were merely somewhat damaged. No other witnesses testified regarding damages.
¶ 16. When Gray rested her case, Framme made a motion for a directed verdict. Framme asserted that Gray had failed to present a prima facie case of liability, emotional damages, punitive damages, and compensatory damages as to the cost of the allegedly damaged property. Before ruling, the circuit court allowed Framme to present Frizell and Woods as witnesses in support of the motion.
¶ 17. The circuit court determined that Gray had put forth a prima facie case of liability for a jury to review. Nonetheless, the circuit court granted Framme’s motion on all other grounds. The circuit court *434 stated that even if the jury found Framme to be liable, her liability would amount to simple negligence at best. Since the standard for claiming emotional distress and punitive damages could not be met in Gray’s simple-negligence case, the circuit court granted Framme’s motion in part. Furthermore, the circuit court asserted that since Gray only testified as to the full replacement value of her property, as opposed to the value of the property at the time of the incident and thereafter, a pri-ma facie case for compensatory damages had only been met regarding the repair and rewiring of the home.
¶ 18. After the case was submitted to the jury, a verdict was returned in favor of Gray in the amount of $4,308. Gray now appeals.
DISCUSSION
¶ 19. The grant or denial of a motion for a directed verdict is reviewed de novo. Solanki v. Enin, 21 So.3d 552, 556 (¶ 8) (Miss.2009) (citation omitted). However, an abuse-of-discretion standard is employed when reviewing a circuit court’s decision to allow or prohibit the issue of punitive damages to be presented to the jury. Estate of Gibson ex rel. Gibson v. Magnolia Healthcare Inc., 91 So.3d 616, 632 (¶ 45) (Miss.2012) (citation omitted). We also use an abuse-of-discretion standard to review a circuit court’s decision to allow a witness to testify. Webb v. Braswell, 930 So.2d 387, 396-97 (¶ 15) (Miss.2006) (citation omitted).
I. Emotional-Distress Damages
¶ 20. Gray first asserts that the circuit judge erred in granting Framme’s motion for a directed verdict regarding emotional distress. Although not specifically pled before the circuit court, Gray asserts that her emotional-distress-damages claim is part of her compensatory-damages claim. Gray’s only evidence with regard to emotional distress stems from her assertions that she has problems sleeping, is fearful when she turns on lights in her home, and has a pre-ulcerous condition. No medical testimony was provided to support her assertions, and she does not claim any physical injury resulting from the incident itself.
¶ 21. Emotional-distress damages may be awarded when a plaintiff shows that the emotional distress was reasonably foreseeable and that the defendant’s conduct was “malicious, intentional[,] or outrageous.” Morgan v. Greenwaldt, 786 So.2d 1037,1044 (¶ 23) (Miss.2001) (citation omitted). Two lines of cases exist regarding claims of emotional distress when no physical injury exists. The Mississippi Supreme Court has stated the following:
It is undisputed that under Mississippi law, a plaintiff asserting a claim for mental anguish, whether as a result of simple negligence or an intentional tort, must always prove that the emotional distress was a reasonably foreseeable result of the defendant’s conduct. In cases of intentional infliction of emotional distress, where the defendant’s conduct was “malicious, intentional, or outrageous,” the plaintiff need present no further proof of physical injury. Where, as here, the defendant’s conduct amounts to simple negligence, ... the proof may solely consist of evidence of a mental injury without physical manifestation.
Adams v. U.S. Homecrafters Inc., 744 So.2d 736, 743 (¶ 21) (Miss.1999). However, the supreme court revisited the issue in American Bankers’ Insurance Company of Florida v. Wells, 819 So.2d 1196, 1208-09 (¶¶ 40-43) (Miss.2001). There, the supreme court determined that while it had not overruled the line of cases allowing for recovery of emotional-distress damages *435 when there is no physical injury, that line of cases serves as the minority view. Id. at 1208 (¶ 41) (citation omitted). The supreme court then concluded that “[a] plaintiff therefore may not recover emotional[-]distress damages resulting from ordinary negligence, without proving some sort of physical manifestation of injury or demonstrable physical harm.” Id. at 1209 (¶ 48).
¶ 22. The supreme court later addressed the issue in University of Southern Mississippi v. Williams, 891 So.2d 160 (Miss.2004). The supreme court then stated that with regard to breach-of-contract actions, a plaintiff must show:
(1) that mental anguish was a foreseeable consequence of the particular breach of contract, and (2) that he or she actually suffered mental anguish. Such generalizations as “it made me feel bad[]” or “it upset me” are not sufficient. A plaintiff must show specific suffering during a specific time frame. These requirements are not different from the requirements to establish physical pain and suffering.
Id. at 178 (¶ 81). Although this is a legal-malpractice action and not a breach-of-contract action, we apply the same generalization standard and Gray must prove that her mental suffering was a foreseeable consequence of Framme’s actions and that she actually suffered mentally or emotionally. See id.
¶ 23. Here, Gray failed to provide any evidence of foreseeability. There is no testimony from any witness that Framme could have reasonably foreseen that its actions or inactions could have caused Gray’s current alleged emotional distress. Furthermore, and more importantly, Gray has not provided any evidence that she actually suffered emotional distress. The only applicable evidence in the record is her own testimony that she has trouble sleeping, is somewhat fearful to turn on lights, and may have a pre-ulcerous condition. However, no medical evidence was provided to support her assertions. Accordingly, we find this issue to be without merit.
II. Punitive Damages
 ¶ 24. Gray next asserts that the circuit court erred in dismissing her punitive-damages claim. “Punitive damages are appropriate only in cases where the plaintiff shows by clear and convincing evidence that the defendant acted with malice, gross negligence evidencing willful, wanton, or reckless disregard for the safety of others, or the commission of actual fraud.” Estate of Gibson, 91 So.3d at 629 (¶ 38) (citation omitted).
¶ 25. In its ruling, the circuit court opined that the extreme conduct required to allow for jury consideration of punitive damages was lacking. The circuit court found that “the actions of the defendant would only rise to simple negligence, if any.” We agree.
¶ 26. The jury found in favor of Gray with regard to Framme’s negligence. Even considering the jury’s determination that Framme acted negligently, the conduct simply does not rise to the level required for consideration of punitive damages. The supreme court has stated that “[pjunitive damages are awarded in the most egregious cases.” Id. Such is not the case here. We cannot find that the circuit court abused its discretion in prohibiting punitive damages from being considered. This issue is meritless.
III. Compensatory Damages
¶ 27. Gray next asserts that the circuit court erred by preventing the jury from considering compensatory damages outside of the home’s rewiring and repair needs. The supreme court has stated the *436 following with regard to personal-property damage:
The general rule is that if there is any remaining value to the damaged property ..., then the measure of damages is the difference in value immediately before the casualty or loss and the value immediately after the damage or injury to the property. Of course, if the property is totally destroyed and rendered absolutely valueless in the accident or casualty, the damages would be the value of the property at the time of such destruction.
Harper v. Hudson, 418 So.2d 54, 57 (Miss.1982) (internal citation omitted). The supreme court has also clarified the plaintiffs burden with regard to documentary evidence of personal-property loss. See Thomas v. Global Boat Builders & Repairmen, Inc., 482 So.2d 1112 (Miss.1986) (distinguished on other grounds by Regency Nissan Inc. v. Jenkins, 678 So.2d 95, 101 (Miss.1995)). In Thomas, the supreme court noted the circuit court’s summary of the plaintiffs burden of proof as follows:
Whenever you come into the Court, you have to establish [whether the property is repairable and, if so, the cost of repair] to the other side before the jury can consider it. In this instance, there were no repairs and the burden was upon the [pjlaintiff at the time to show by competent proof that the [allegedly damaged item] was or was not repairable. If it were repairable, to show by competent proof, what items needed to be repaired as a result of the contact and what the costs of those items were. That was not offered and that was not done in this case. Given that[,] then the court has no alternative but to direct a verdict in this case ... in favor of the ... defendants.
Id. at 1114. Thereafter, the supreme court supported the circuit court’s judgment by stating:
When a plaintiff has available to him sources and means whereby damages may be calculated to a fair degree of certainty ... and he does not secure for trial such available proof, the circuit judge is perfectly correct in presuming if the plaintiff had any actual proof of damages he would have come forward with it. And, in such a case as this, the circuit judge was unquestionably correct in directing a verdict for the defendants.
Id. at 1117.
¶ 28. Like in Thomas, Gray provided no proof of repair costs. She merely testified as to the cost of replacing each item she alleged was damaged. The only other witnesses that testified regarding damages were Teague and Woods. We will address Gray’s arguments regarding Woods’s testimony later. Regardless, no one testified as to repair costs of the allegedly damaged items or the value of the items at the time of the incident. As stated by the circuit court, the measure of damages is the value of the property at the time of the incident versus the value of the property immediately after the incident. The circuit court explained:
After going back through the testimony of Ms. Gray, as well as the testimony of Mr. Teague, the only thing they testified to is what they — the values they show on the exhibits or what it will cost to replace the appliance, to purchase a new appliance.... If the value of the property is $150 at the time of the incident; and after the incident, if the value was $50, then the plaintiff is entitled to $100. And the only thing the jury has before it at this time is what it will cost to purchase a new appliance. And I think that’s what Ms. Gray testified to as well as Mr. Teague who basically stated that *437 he just used the values that [were] given to him by people who sold these products.
¶ 29. We agree. Gray failed to provide an adequate showing of damages sufficient to present to a jury. This issue is without merit.
IV. Witness Testimony
¶ 30. Finally, Gray argues that the circuit court improperly allowed testimony from Woods in support of Framme’s motion for a directed verdict. We will only reverse a circuit court’s decision to allow expert testimony upon a showing of prejudice. Jones v. State, 918 So.2d 1220, 1223 (¶ 9) (Miss.2005) (citation omitted).
¶ 31. Here, the circuit court conducted an on-the-record Daubert[1] examination of the witness prior to his testimony in the courtroom. Additionally, Woods’s deposition was taken before counsel for both parties prior to the trial, and Gray’s counsel had adequate time to prepare a cross-examination for the trial. Finally, and most importantly, Gray’s counsel made no objection to Woods testifying. It is well settled that counsel must make an objection at trial in order to preserve an issue for appeal. InTown Lessee Assocs. v. Howard, 67 So.3d 711, 718-19 (¶ 25) (Miss.2011) (citation omitted). This issue is without merit.
¶ 32. THE JUDGMENT OF THE HOLMES COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J, IRVING, P.J., BARNES, ROBERTS AND FAIR, JJ., CONCUR. MAXWELL, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. CARLTON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. GRIFFIS, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. JAMES, J., NOT PARTICIPATING.

. Daubert v. Merrell Dow Pharms. Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).