# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-01496-COA

**ESTATE OF FRANCIS N. BURGESS SR.**                     **APPELLANT**

**v.**

**H. ALEX TROTTER**                                      **APPELLEE**

DATE OF JUDGMENT:               09/19/2016
TRIAL JUDGE:                    HON. WILLIAM A. GOWAN JR.
COURT FROM WHICH APPEALED:      HINDS COUNTY CIRCUIT COURT,
                                FIRST JUDICIAL DISTRICT
ATTORNEYS FOR APPELLANT:        JOE S. DEATON III
                                RICHARD JASON CANTERBURY
ATTORNEY FOR APPELLEE:          JOHN DENVER FIKE
NATURE OF THE CASE:             CIVIL - PROPERTY DAMAGE
DISPOSITION:                    AFFIRMED AS MODIFIED - 04/03/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE IRVING, P.J., CARLTON AND GREENLEE, JJ.**

**IRVING, P.J., FOR THE COURT:**

¶1.     The Estate of Francis N. Burgess Sr. (Burgess) appeals the judgment of the Hinds County Circuit Court, First Judicial District, rendered in favor of H. Alex Trotter (Trotter). Burgess submits three alleged errors: (1) the trial court's order was against the overwhelming weight of the evidence; (2) the amount of damages awarded was not supported by the evidence; and (3) the trial court erred by failing to articulate its findings of fact and conclusions of law.

## FACTS

¶2.     On May 12, 1999, Trotter filed a complaint in the County Court of Hinds County,

First Judicial District, against his neighbor, Burgess. Trotter alleged that Burgess had trespassed on his land numerous times, removed posted signs, and damaged various items of property. While the case was pending, an ancillary chancery court proceeding concerning the ownership of the land in question was also ongoing, and, ultimately, the chancery court ruled that Trotter was the owner of the land in dispute. In the interim, Burgess passed away.[1]

¶3. During the trial, which was held in 2014, Trotter submitted financial documents to substantiate his claims for damages. Trotter also called numerous witnesses to testify as to Burgess's activities on his land. Burgess filed a motion for findings of fact and conclusions of law on January 14, 2014. The county court entered its order on January 31, 2014, finding that Burgess had trespassed on property owned by Trotter. The county court awarded Trotter $59,915.40 in damages and $13,181 in attorney's fees. The county court's order was later amended to include an eight percent post-judgment-interest adjustment. On February 19, 2014, the county court entered an order denying Burgess's January 14 motion.

¶4. On March 14, 2014, Burgess appealed the county court's judgment to the circuit court. Burgess cited four alleged errors: (1) the county court erred by failing to make findings of fact; (2) the award of damages was not supported by substantial evidence; (3) the award of post-judgment interest was improper; and (4) the award of attorney's fees was improper. On September 19, 2016, the circuit court affirmed the county court's judgment with respect to

---

[1] Any further references to Burgess will refer to his estate's representation of this matter, unless otherwise stated or context dictates differently.

issues one through three, but found that attorney's fees were improper. Burgess appeals.

DISCUSSION

¶5. The standard of review for "factual determinations made by the trial judge as the sole trier of fact in a bench trial is the substantial evidence standard. The findings of the trial judge will not be disturbed unless the judge abused his discretion, was manifestly wrong or clearly erroneous or applied an erroneous legal standard." *Delta Reg'l Med. Ctr. v. Taylor*, 112 So. 3d 11, 19 (¶21) (Miss. Ct. App. 2012) (internal quotations and citations omitted).

¶6. In addition to Burgess's arguments below, he contends that there should have been a jury trial. Trotter correctly responds that this issue was not brought before the county court, and there is no evidence in the record that Burgess requested a jury trial or objected to a bench trial. As such, this issue is procedurally barred.

*I.      Weight of the Evidence*

¶7. Burgess argues that Trotter's claims are not supported by substantial, credible, and reasonable evidence. He asserts that the county court erred by misjudging the credibility of Trotter and his witnesses; admitting Trotter's financial records; and not ruling in accordance with what he believes was overwhelming evidence against Trotter. Trotter argues that based on the record, which is replete with eyewitness testimony, and documentary evidence to support the damages award, the decision of the court should be affirmed.

¶8. The county court found that the testimony and supporting documentation established that Burgess: (1) destroyed Trotter's fence surrounding his property several times; (2) burned

3

hay located on Trotter's property; (3) plowed up Trotter's crops; (4) damaged Trotter's tractor; (5) destroyed several "no trespassing" signs located on Trotter's property; (6) caused Trotter to have to hire a surveyor on multiple occasions; (7) assaulted Trotter, resulting in medical bills; and (8) was responsible for several other property-related damages.

¶9. Trotter testified as to each of those eight allegations and provided documentary evidence to substantiate the amount of damages. He stated that he personally witnessed most of the damage, he was assaulted by Burgess, and he had to call the police several times because of Burgess's actions. In addition to Trotter's testimony, the county court heard from several other witnesses who testified that they personally saw Burgess trespass on Trotter's property and cause damage. Elmer Everett, one of Trotter's employees, testified that he saw Burgess tear down Trotter's fences, damage Trotter's trailer, assault Trotter, and plow up Trotter's fields. Trotter's wife, Donna Trotter, testified that she saw Burgess cut down fences on three separate occasions. Trotter's oldest son, Wilson Trotter, testified that he saw Burgess cut down Trotter's fences, and, although he was not personally there to witness Burgess burning the hay or plowing the fields, Wilson testified as to his personal knowledge of the aftermath.

¶10. As stated, in "a bench trial, the [trial judge] is the finder of fact and, thus, solely determines the credibility of witnesses and the weight to give to the evidence. We cannot reweigh the evidence and must defer to the [trial judge]'s findings of the facts, so long as they are supported by substantial evidence." *Stasher v. Perry*, 217 So. 3d 765, 772 (¶31)

4

(Miss. Ct. App. 2017) (internal quotations and citations omitted).

¶11. Based on the record, we find that the county court's findings are supported by substantial evidence. Thus, this issue is without merit.

*II. Damages*

¶12. Next, Burgess argues that the county court erred in awarding Trotter damages. He states that the damages should not have been awarded because they were not based on adequate proof and were too speculative. He also contends that because the county court did not issue findings of fact, it is unknown whether certain items were improperly included in the court's calculation of damages. He therefore requests that the case be reversed and remanded for the county court to make specific findings of fact.

¶13. Trotter notes that he introduced evidence in the form of canceled checks, estimates for fencing replacement, costs for surveys, labor for repairs, repairs for damaged tractor parts, damaged trailer parts, lost hay costs, and costs to repair a damaged hay field. Trotter argues on appeal that the record is void of any cross-examination which would call into question the validity of the expenses and damages and that there were no objections from Burgess when the evidence was introduced. Trotter is incorrect. There were numerous objections to the introduction of certain evidence offered by Trotter. Additionally, the record reflects that Burgess's attorney's cross-examination attacked the validity of the evidence offered against Burgess. Nevertheless, we find that the court's award of damages is supported by substantial evidence.

5

It is well-understood that in an action seeking damages, the plaintiff bears the burden of proof as to the amount of damages. This requires the plaintiff to place into evidence such proof of damages as the nature of case permits, with as much accuracy as is reasonably possible. Where the existence of damages has been established, the plaintiff will not be denied the damages awarded by a fact finder merely because a measure of speculation and conjecture is required in determining the amount of the damages.

*J.K. v. R.K.*, 30 So. 3d 290, 299 (¶34) (Miss. 2009) (internal quotations and citations omitted). Based on our review of the record, we find that Trotter satisfied his obligation to prove by credible evidence that he suffered the damages that he claimed, except as to the amount claimed for the repair of the fence. We find that the amount for the cost of the fence should be $45,833.68, rather than the claimed amount of $47,743.40.[2] Therefore, as discussed more fully below, we modify the judgment to reflect an amount of $58,005.68, with the judgment accruing post-judgment interest at the rate of eight percent.

¶14. The dissent takes issue with the amount of damages awarded by the trial court, explaining that the mathematical calculation for the fence repair on the damage summary sheet submitted by Trotter is incorrect and that the supporting documentation does not support the ultimate figure reflected on the damage summary sheet as the total cost for repairing the fence. The dissent, in further buttressing its argument that the evidence does not support the amount of damages awarded, points out that Trotter testified to the penny about a cost-estimate proposal that he received for repairing the fence, yet he did not produce

---

[2] Trotter offered a damage summary sheet into evidence that showed the total damages suffered to be $59,915.40. Included in that total was $47,743.40 representing the cost to repair the fence four different times.

it, and more importantly, did not hire the preparer of the estimate, nor any third party, to repair the fence. Finally, the dissent argues that "there is no evidence that Trotter ever paid the amount of the estimate, or anything close to it, to replace the fence"—pointing out that the checks and receipts that Trotter presented total only about $10,000.

¶15. We agree with the dissent that the damage summary sheet indicates that the cost for repairing the fence is shown as $11,348.42 and that four times that figure equals $45,393.68, not $47,743.40, as reflected on the summary sheet.[3] The dissent is correct that Trotter did not produce an estimate for $11,348.42. He did, however, produce an estimate for $11,935.85 from All Metro Fence Company, dated January 2, 2014.

¶16. Danny Street, owner of All Metro Fence Company, was accepted as a person qualified to give cost estimates for building farm fences. He testified that he had been in the fence building business approximately nine years. He further testified that he had visited Trotter's farm and had observed fences knocked down on the property. He could not recall the precise year that occurred, but he knew that it was not as far back as 1997, 1998, or 1999. However, he testified that back then, the cost would have been approximately four percent less than the cost in 2014. Therefore, the evidence shows that Trotter proved by credible evidence that the cost of repairing the fence at the time Burgess destroyed it four times was at least $11,458.42 ($11,935.85 minus four percent—$477.43—equals 11,458.42).

---

[3] Trotter testified that Burgess destroyed sections of Trotter's fence four times and that he had to repair it on four separate occasions.

¶17. Trotter was entitled to recoup the aggregate cost of having to repair his fence the four times that Burgess destroyed it. It appears the dissent concedes as much but argues that since Trotter repaired the fence himself, using his farm labor, and presented receipts, which represented only some of the repair costs claimed, he was only entitled to receive the exact amount of the total of the receipts produced, despite Trotter's testimony that the receipts did not cover all of his costs. It is obvious to us that the purpose of Street's testimony was to show the reasonableness of the cost claimed by Trotter for the restoration of his fence.

¶18. For several reasons, we cannot agree with the apparent view of the dissent that since Trotter chose to repair the fence himself (using his farm laborers), he was not entitled to receive the amount that a commercial fence builder like All Metro Fence Company would have charged. First, there is no requirement in our law that Trotter had to repair the fence at all before he could recover from Burgess for the damages that Burgess caused. He could have chosen to prove his damages by showing what it would have cost him to have it repaired by a commercial entity in the fence building/repair business and simply kept the money. Second, our law does not require that the cost an injured party is entitled to receive to repair his property damaged by another must be diminished if the injured party is able to repair the damaged property himself at a cost less than that charged by a qualified commercial entity. Third, the measure of damages due an injured party is determined by the reasonableness of the amount claimed to make the injured party whole, and the fact that the injured party can, and may, repair the property himself at a lower cost is of no consequence.

8

Would an automobile body shop owner be precluded from recovering the commercial cost of repairing his vehicle damaged by another simply because he could repair it cheaper than what it would cost him to have it repaired by another body shop not extending any professional courtesies? We think not. The amount that it takes to make an injured person whole—and the amount that the tortfeasor must pay—is not dependent upon the skills or ingenuity of the injured party or the consideration that others may extend to him regarding his injury.

¶19. We agree that Trotter did not produce receipts totaling anything near the amount he claimed. However, we see no reason to reverse the amount of damages awarded based on the proof presented. In arriving at this conclusion, we note that there was no objection to Street being accepted as a person qualified to give cost estimates for building/repairing farm fences, nor was there any objection to composite Exhibit No. 7, that contained the $11,935.85 proposal for repairing the amount of fence destroyed by Burgess. As stated, Street testified without objection that at the time of the destruction of the fence by Burgess, it would have cost approximately four percent less than the amount of his current proposal to repair the fence. Trotter testified without objection that Burgess destroyed Trotter's fence four times and that Trotter repaired the fence on four separate occasions. And finally, of utmost importance is the fact that Burgess offered no evidence contradicting or rebutting any of Street's testimony regarding the cost of repairing the fence.

¶20. The dissent says that the essence of our holding is: if someone knocks down a

9

property owner's fence, and the property owner has the fence repaired at a cost of only $10,000, the property owner can nevertheless recover $45,000 in damages as long as the property owner can find someone to give him an estimate of $45,000 for a new fence. That view is a gross misrepresentation of the facts and what we hold. In reaching this conclusion, the dissent overlooks some undisputed facts.

¶21. First, as stated, Trotter testified that Burgess destroyed Trotter's fence on four separate occasions, and Trotter repaired it on four separate occasions. This testimony was not rebutted. Trotter's failure to produce receipts totaling the amount that he claimed he was damaged does not refute his testimony that he repaired the fence on four separate occasions, nor does it prove that his damages only totaled the amount of the receipts that he was able to produce. Such failure is simply a fact to be weighed by the fact finder.

¶22. Second, by his testimony, Trotter established that other receipts existed at one time; he was just unable to locate all of them. That he could not locate all of them does not necessarily render his testimony incredible given that the destruction of the fence occurred more than fourteen years prior to the trial. In any event, this was also a fact to be weighed by the fact finder.

¶23. Third, even if Trotter had been able to locate and present receipts for all of his expenditures, he still would have had to show that the expenditures were reasonable and necessary. What if Trotter had produced receipts totaling $75,000 and testified that all of the expenditures were incurred in repairing the fence that Burgess destroyed, would he have been

10

able to recover that amount simply because he was able to produce receipts totaling $75,000? Of course not; he still would have had to show that the amount claimed was reasonable and necessary. Such example exposes the fallacy of the dissent's argument that Trotter was not entitled to recover the reasonable cost of the necessary repairs to his fence simply because he did not have all the receipts representing the expenditures that he incurred in making the repairs. If that were true, then the opposite corollary would be too. In the $75,000 fact scenario, Trotter, without providing any additional evidence, could recover the $75,000.

¶24. Street's testimony completed Trotter's burden of proof to show that the cost claimed was reasonable. No one disputes that repairing the fence was necessary or that Trotter repaired it four times. As stated, the dissent's contention—that Trotter is not entitled to recover the reasonable cost of the necessary repair of his fence that Burgess destroyed because he repaired the fence himself, perhaps for an amount less than the market rate, rather than have it repaired by someone else at the market rate—is not supported by our law. Reasonable cost is determined by what a qualified person—performing the kind of services that are required to make the necessary repairs—would charge the general public to make the repair, not by the number of receipts that an individual whose property has been destroyed produces and assigns to the repair job. Here, the market rate for the repair was provided by the unchallenged testimony of Street.

¶25. Extending the dissent's reasoning to its furthest extent would produce abnormal results that have no basis in the law. Consider this: would not a property owner—who gets

11

three cost-estimate proposals from three persons who are qualified to give estimates for the repair of his property that has been damaged or destroyed by another and collects the amount specified in the lowest proposal from the person who caused the damage, but repairs his property himself for an amount lesser than the amount of the lowest proposal—commit fraud, and, presumably, be liable for the difference to the person who damaged his property?

¶26.    Based on the evidence presented, the trial court could reasonably find from substantial evidence that for the four times that Trotter had to repair his fence, he was entitled to four times the amount that it would cost for one repair. Street's testimony was sufficient to establish the reasonable cost of one repair. Doing the calculation reveals that the amount to assign to the cost of the fence repair is $45,833.68. On the damage summary sheet, the cost of the fence repair is listed as $47,743.40. Not listed is the hospital expense that Trotter incurred when he had to be taken to the hospital after being assaulted by Burgess. Trotter testified that his hospital cost was $1,000. We are reasonably sure that Trotter endured some pain and suffering as a result of the assault. However, apparently he did not make a claim for any. As stated, the total judgment awarded was $59,915.40. We find from our perusal of the record substantial evidence to support it. Nevertheless, the judgment included a specific amount ($47,743.40) as the cost of repairing the fence, and the evidence supports a finding that the fence could have been repaired four times for $45,833.68, a net difference of $1,909.72. We, therefore, modify the judgment to reflect this change, and affirm the judgment in the modified amount of $58,005.68, plus post-judgment interest at the rate of

eight percent.

###### III. Findings of Fact and Conclusions of Law

¶27. Finally, Burgess asserts that the county court erred by not providing findings of fact and conclusions of law after he made two requests that they be provided. "In all actions tried upon the facts without a jury the court may, and shall upon the request of any party to the suit or when required by these rules, find the facts specially and state separately its conclusions of law thereon and judgment shall be entered accordingly." M.R.C.P. 52(a).

¶28. Trotter notes that when the county court was prepared to hear Burgess's motion, Burgess's counsel had voluntarily left the court, without arguing the motion. Trotter also asserts that there were sufficient findings of fact in the county court's opinion as evidenced by the circuit court's conclusion that it could not "say the county court failed to make findings of fact although the order is rather short, it does list the particular conduct for which damages are awarded." "[A]lthough [appellate courts] prefer[] trial courts to make separate particularized findings of fact and conclusions of law, general findings of fact and conclusions of law do not require reversal, and they technically conform to the requirements of [Rule] 52." *Ill. Cent. R. Co. v. McDaniel*, 951 So. 2d 523, 529 (¶21) (Miss. 2006). Based on trial testimony and documentary evidence, the trial court properly found that Burgess repeatedly trespassed onto Trotter's land causing severe damage by willfully doing things such as tearing down fences, burning hay, plowing crops, and damaging farm equipment. Although short, the court articulated its findings, and we find them sufficient to satisfy the

13

requirements of Rule 52(a).  This issue is without merit.

¶29.  **AFFIRMED AS MODIFIED.**

**LEE, C.J., BARNES, CARLTON, GREENLEE AND WESTBROOKS, JJ., CONCUR.  FAIR, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.  TINDELL, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.  WILSON, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY GRIFFIS, P.J.**

**WILSON, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶30.  I concur in Parts I and III of the majority opinion, as I agree that there was evidence to support the trial judge's findings that Burgess trespassed and caused damage to Trotter's property, and I agree that the trial judge made sufficient findings under Rule 52.  However, I dissent as to Part II because the evidence does not support the amount of damages awarded. I would reverse and remand for a new trial on damages.

¶31.  A one-page "Damage Summary" that "[Trotter] and [his lawyer] composed in anticipation of trial" was admitted into evidence over Burgess's objections.  The document lists eleven types of alleged damages totaling $59,915.40, and the trial judge ultimately awarded Trotter exactly that amount in damages.  The most significant line on the list by far relates to Burgess's destruction of Trotter's fence.  The line, which accounts for almost eighty percent of Trotter's alleged damages, states as follows:

1.  Cost of Fence - ($11,348.42 x 4)          $47,743.40

¶32.  Trotter and other witnesses testified that Burgess completely destroyed Trotter's approximately half-mile fence four different times, hence the notation, "x 4."  Trotter said

14

that this occurred in September 1998 and in January, February, and March 1999.

¶33. There was testimony to support Trotter's claim that Burgess damaged or destroyed the fence four times, but the basis for Trotter's damages claim and calculation is not entirely clear and lacks support in the evidence. To begin with, the math is wrong. $11,348.42 multiplied by four is only $45,393.68—or $2,349.72 less than Trotter claims. I cannot discern from the record an explanation for this error.

¶34. But the problems with this claim for damages run deeper than bad math. Trotter testified that at an unspecified time he obtained an "estimate" for the cost of replacing the fence from an unidentified third party. Although Trotter testified to the amount of this estimate to the penny, he did not introduce the actual estimate into evidence. Apparently, he no longer had it. More important, there is no evidence that Trotter ever paid that amount, or anything close to it, to replace the fence. Nor is there any evidence that any third party ever did any work for Trotter based on the estimate. Rather, witnesses testified that Trotter's farmhand, Elmer Everett, and Trotter's son, Wilson, repaired the fence with the help of some other workers who Trotter paid by the hour.

¶35. Consistent with his testimony, Trotter offered as evidence a number of cancelled checks payable to Everett and others with notations such as "farm labor" and a number of receipts from a hardware store for barbed wire and other materials. The checks were written in 1998, 1999, and 2000; they cover the entire time period of the four alleged incidents, and some even predate the first alleged fence destruction. Trotter testified that the checks

15

showed "many of the expenses that [he] incurred" rebuilding the fence, and he testified that he "ha[d] a lot of [the checks]," but some were missing. However, all of these cancelled checks and receipts appear to reflect only about $10,000 in expenditures by Trotter. There is no evidence in the record to indicate that the actual cost of repairing the fence was anything close to the $47,743.40 that Trotter claimed as damages.

¶36. "Where the injury to property is repairable, the cost of repairs is a proper measure of damages." *Thomas v. Global Boat Builders & Repairmen Inc.*, 482 So. 2d 1112, 1115 (Miss. 1986) (quoting *Teledyne Exploration Co. v. Dickerson*, 253 So. 2d 817, 819 (Miss. 1971)). A plaintiff's "proof must establish (1) that the repairs were necessary as the result of the wrongful act, and (2) that the cost was reasonable." *Id.* "[A] plaintiff is required to place into evidence such proof of damages as the nature of his case permits, with as much accuracy as is reasonably possible for him." *Id.* at 1116.[4] "When a plaintiff has available to him sources and means whereby damages may be calculated to a fair degree of certainty, as in this case, and he does not secure for trial such available proof, the [trial] judge is perfectly correct in presuming if the plaintiff had any actual proof of damages he would have come forward

_____

[4] Although the majority emphasizes that the trial occurred fourteen years after the events at issue, *see ante* at ¶22, Trotter and Burgess were already involved in related litigation when these events occurred, *see Burgess v. Trotter*, 840 So. 2d 762, 764 (¶3) (Miss. Ct. App. 2003), and Trotter filed the complaint in this case only two months after the fourth alleged fence destruction. The law presumes that Trotter retained whatever proof of damages he had. *See Thomas*, 482 So. 2d at 1117. The majority, in contrast, assumes that Trotter lost or lacked documentation for about $37,000 out of a claim for $47,743.40 in damages.

16

with it." *Id.* at 1117.

¶37.    An estimate for repairs may be valid evidence of damages in cases in which the damage to the property has not been repaired at the time of trial.  However, when, as in this case, the property has *already* been repaired, it makes no sense to award damages based on an alleged estimate by an unidentified third party who apparently did not make the repairs. The actual cost of the repairs should be the measure of damages, and it was Trotter's burden as the plaintiff to demonstrate the actual cost he incurred in making the repairs.

¶38.    Bottom line, this is what the majority opinion holds:  If someone knocks down my fence, and I *actually* have the fence repaired at a cost of only $10,000, I can nevertheless recover $45,000 in damages as long as I can find someone to give me an estimate of $45,000 for a new fence.[5]  That is not the law.  *Thomas*, 482 So. 2d at 1115 ("Where the injury to property is repairable, the cost of repairs is a proper measure of damages.").[6]  To be clear, the problem in this case is not simply that Trotter produced just $10,000 in checks and receipts to support a claim for $47,743.40 in damages.  The problem is that Trotter produced

---

[5] The majority alternately defends this holding, *see, e.g.*, *ante* at ¶¶18, 24, and disavows it, *see, e.g.*, *ante* at ¶20.  The majority also makes various claims about what "our law" does or does not require, but its entire of discussion of this issue does not cite a single case.  There is, for example, no authority cited for the proposition that an estimate offered by a "qualified person" to the "general public" is the measure of damages—even if the repairs have been made, and the estimate bears no relationship to the plaintiff's actual cost of making the repairs.  *See ante* at ¶24.

[6] To answer the rhetorical question posed in paragraph 18 of the majority opinion, if an auto body shop owner *actually* repairs his car at a cost of only $1,000, then, yes, that is his cost of repairs and the proper measure of damages.  He cannot recover $5,000 just because another body shop gives him an estimate for that amount.

*no evidence* that he *actually* spent anything approaching $47,743.40 to repair his fence.

¶39.    In a bench trial, the trial judge's award of damages will be set aside if it is so excessive "as to strike mankind at first blush as beyond all measure, unreasonable in amount and outrageous." *Johnson & Johnson Inc. v. Fortenberry*, 234 So. 3d 381, 404-05 (¶84) (Miss. 2017) (quoting *Foster v. Noel*, 715 So. 2d 174, 183 (¶56) (Miss. 1998)).  The award in this case is beyond all measure, unreasonable, and outrageous because there is no evidence that it bears any rational relationship to the actual cost of repairs incurred by Trotter. Accordingly, I would reverse and remand the case for a new trial on damages.  *See, e.g.*, *Univ. of S. Miss. v. Williams*, 891 So. 2d 160, 175-76 (¶¶46-48) (Miss. 2004); *Savage v. LaGrange*, 815 So. 2d 485, 489 (¶7) (Miss. Ct. App. 2002).

**GRIFFIS, P.J., JOINS THIS OPINION.**