WILSON, J., CONCURRING IN PART AND DISSENTING IN PART:
 

 ¶ 30. I concur in Parts I and III of the majority opinion, as I agree that there was evidence to support the trial judge's findings that Burgess trespassed and caused damage to Trotter's property, and I agree that the trial judge made sufficient findings under Rule 52. However, I dissent as to Part II because the evidence does not support the amount of damages awarded. I would reverse and remand for a new trial on damages.
 

 ¶ 31. A one-page "Damage Summary" that "[Trotter] and [his lawyer] composed in anticipation of trial" was admitted into evidence over Burgess's objections. The document lists eleven types of alleged damages totaling $59,915.40, and the trial judge ultimately awarded Trotter exactly that amount in damages. The most significant line on the list by far relates to Burgess's destruction of Trotter's fence. The line, which accounts for almost eighty percent of Trotter's alleged damages, states as follows:
 

 1. Cost of Fence - ($11,348.42 x 4) $47,743.40
 

 ¶ 32. Trotter and other witnesses testified that Burgess completely destroyed Trotter's approximately half-mile fence four different times, hence the notation, "x 4." Trotter said that this occurred in September 1998 and in January, February, and March 1999.
 

 ¶ 33. There was testimony to support Trotter's claim that Burgess damaged or destroyed the fence four times, but the basis for Trotter's damages claim and calculation is not entirely clear and lacks support in the evidence. To begin with, the math is wrong. $11,348.42 multiplied by four is only $45,393.68-or $2,349.72 less than Trotter claims. I cannot discern from the record an explanation for this error.
 

 ¶ 34. But the problems with this claim for damages run deeper than bad math. Trotter testified that at an unspecified time he obtained an "estimate" for the cost of replacing the fence from an unidentified third party. Although Trotter testified to the amount of this estimate to the penny, he did not introduce the actual estimate into evidence. Apparently, he no longer had it. More important, there is no evidence that Trotter ever paid that amount, or anything close to it, to replace the fence. Nor is there any evidence that any third party ever did any work for Trotter based on the estimate. Rather, witnesses testified that Trotter's farmhand, Elmer Everett, and Trotter's son, Wilson, repaired the fence with the help of some other workers who Trotter paid by the hour.
 

 ¶ 35. Consistent with his testimony, Trotter offered as evidence a number of cancelled checks payable to Everett and others with notations such as "farm labor" and a number of receipts from a hardware store for barbed wire and other materials. The checks were written in 1998, 1999, and 2000; they cover the entire time period of the four alleged incidents, and some even predate the first alleged fence destruction. Trotter testified that the checks showed "many of the expenses that [he] incurred" rebuilding the fence, and he testified that he "ha[d] a lot of [the checks]," but some
 were missing. However, all of these cancelled checks and receipts appear to reflect only about $10,000 in expenditures by Trotter. There is no evidence in the record to indicate that the actual cost of repairing the fence was anything close to the $47,743.40 that Trotter claimed as damages.
 

 ¶ 36. "Where the injury to property is repairable, the cost of repairs is a proper measure of damages."
 
 Thomas v. Global Boat Builders & Repairmen Inc.
 
 ,
 
 482 So.2d 1112
 
 , 1115 (Miss. 1986) (quoting
 
 Teledyne Exploration Co. v. Dickerson
 
 ,
 
 253 So.2d 817
 
 , 819 (Miss. 1971) ). A plaintiff's "proof must establish (1) that the repairs were necessary as the result of the wrongful act, and (2) that the cost was reasonable."
 

 Id.
 

 "[A] plaintiff is required to place into evidence such proof of damages as the nature of his case permits, with as much accuracy as is reasonably possible for him."
 
 Id.
 
 at 1116.
 
 [4]
 
 "When a plaintiff has available to him sources and means whereby damages may be calculated to a fair degree of certainty, as in this case, and he does not secure for trial such available proof, the [trial] judge is perfectly correct in presuming if the plaintiff had any actual proof of damages he would have come forward with it."
 
 Id.
 
 at 1117.
 

 ¶ 37. An estimate for repairs may be valid evidence of damages in cases in which the damage to the property has not been repaired at the time of trial. However, when, as in this case, the property has
 
 already
 
 been repaired, it makes no sense to award damages based on an alleged estimate by an unidentified third party who apparently did not make the repairs. The actual cost of the repairs should be the measure of damages, and it was Trotter's burden as the plaintiff to demonstrate the actual cost he incurred in making the repairs.
 

 ¶ 38. Bottom line, this is what the majority opinion holds: If someone knocks down my fence, and I
 
 actually
 
 have the fence repaired at a cost of only $10,000, I can nevertheless recover $45,000 in damages as long as I can find someone to give me an estimate of $45,000 for a new fence.
 
 [5]
 
 That is not the law.
 
 Thomas
 
 ,
 
 482 So.2d at 1115
 
 ("Where the injury to property is repairable, the cost of repairs is a proper measure of damages.").
 
 [6]
 
 To be clear, the problem in this case is not simply that Trotter produced just $10,000 in checks and receipts to support a claim for
 $47,743.40 in damages. The problem is that Trotter produced
 
 no evidence
 
 that he
 
 actually
 
 spent anything approaching $47,743.40 to repair his fence.
 

 ¶ 39. In a bench trial, the trial judge's award of damages will be set aside if it is so excessive "as to strike mankind at first blush as beyond all measure, unreasonable in amount and outrageous."
 
 Johnson & Johnson Inc. v. Fortenberry
 
 ,
 
 234 So.3d 381
 
 , 404-05 (¶ 84) (Miss. 2017) (quoting
 
 Foster v. Noel
 
 ,
 
 715 So.2d 174
 
 , 183 (¶ 56) (Miss. 1998) ). The award in this case is beyond all measure, unreasonable, and outrageous because there is no evidence that it bears any rational relationship to the actual cost of repairs incurred by Trotter. Accordingly, I would reverse and remand the case for a new trial on damages.
 
 See, e.g.
 
 ,
 
 Univ. of S. Miss. v. Williams
 
 ,
 
 891 So.2d 160
 
 , 175-76 (¶¶ 46-48) (Miss. 2004) ;
 
 Savage v. LaGrange
 
 ,
 
 815 So.2d 485
 
 , 489 (¶ 7) (Miss. Ct. App. 2002).
 

 GRIFFIS, P.J., JOINS THIS OPINION.
 

 Although the majority emphasizes that the trial occurred fourteen years after the events at issue,
 
 see
 

 ante
 
 at ¶ 22, Trotter and Burgess were already involved in related litigation when these events occurred,
 
 see
 

 Burgess v. Trotter
 
 ,
 
 840 So.2d 762
 
 , 764 (¶ 3) (Miss. Ct. App. 2003), and Trotter filed the complaint in this case only two months after the fourth alleged fence destruction. The law presumes that Trotter retained whatever proof of damages he had.
 
 See
 

 Thomas
 
 ,
 
 482 So.2d at 1117
 
 . The majority, in contrast, assumes that Trotter lost or lacked documentation for about $37,000 out of a claim for $47,743.40 in damages.
 

 The majority alternately defends this holding,
 
 see, e.g.
 
 ,
 
 ante
 
 at ¶¶ 18, 24, and disavows it,
 
 see, e.g.
 
 ,
 
 ante
 
 at ¶ 20. The majority also makes various claims about what "our law" does or does not require, but its entire of discussion of this issue does not cite a single case. There is, for example, no authority cited for the proposition that an estimate offered by a "qualified person" to the "general public" is the measure of damages-even if the repairs have been made, and the estimate bears no relationship to the plaintiff's actual cost of making the repairs.
 
 See
 

 ante
 
 at ¶ 24.
 

 To answer the rhetorical question posed in paragraph 18 of the majority opinion, if an auto body shop owner
 
 actually
 
 repairs his car at a cost of only $1,000, then, yes, that is his cost of repairs and the proper measure of damages. He cannot recover $5,000 just because another body shop gives him an estimate for that amount.